**STATE of Missouri, Plaintiff-Respondent,**

**v.**

**William Edward BECKER, Defendant-Appellant.**

**No. 24856.**

Kansas City Court of Appeals.

Missouri.

June 3, 1968.

Harold L. Miller, of Robison & Miller, Maysville, for appellant.

Robert B. Paden, Maysville, Pros. Atty., DeKalb County, for respondent.

HARRY A. HALL, Special Judge.

This is an appeal from the judgment of the Circuit Court of DeKalb County (jury trial being waived by the parties) finding the defendant guilty of driving an automobile in an intoxicated condition, as charged in the information.

The evidence shows that defendant was operating his automobile about 3 o'clock the morning of July 31, 1966, on old U.S. Highway 36 near the city limits of Cameron, Missouri, when his car left the road and went through the highway guardrail. Two Highway Patrol officers found him shortly thereafter, and he readily admitted driving the automobile. His breath had a strong odor of alcoholic beverages, his face was flushed, and his speech was slightly slurred.

He was arrested and taken to the Highway Patrol office in Cameron, about one mile from the scene of the accident, and after being apprised of his constitutional and statutory rights, voluntarily consented to take the breathalyzer test, which was given by Officer Leroy T. Soperla at 3:40 a. m., some forty minutes after the arrest. Defendant's breath tested between .26 and .27 alcoholic content, considerably in excess of the limit of .15 prescribed by Section 564.442(3). (All references to statutes are to RSMo 1959, and V.A.M.S.)

Defendant seeks to reverse his conviction on two assignments of error: (1) that the State did not make a submissible case of his intoxication, and (2) that the officer performing the breathalyzer test did not have a valid permit issued by the State Division of Health.

Section 564.441, enacted by the legislature in the interest of the public welfare and safety, seeks to prevent the operation of motor vehicles on public highways by persons in an intoxicated condition. At the time of his arrest, defendant had a strong odor of alcohol on his breath, his face was flushed, and he had been unable to control his automobile. He was asked to take the breathalyzer test, under the statute which provides that "chemical analysis of the person's breath, * * *· shall be performed according to methods approved by the state division of health by a person possessing a valid permit issued by the state division of health for this purpose."

Defendant contends that the admission of the breathalyzer test was error in that there was a failure of proof: that the machine was in proper working order; that the chemicals were of the correct kind and compounded in the proper proportions; that he had taken no food or drink within fifteen minutes before the test; or that it was given by a qualified operator in the proper manner or method approved by the State Division of Health.

The breathalyzer machine is considered a reliable device for measuring intoxication, as our Supreme Court has ruled, and defendant does not contend otherwise. Its operation has been described by the Supreme Court in Blydenburg v. David, 413 S.W.2d 284, 288: "* * * a 'breathalyzer' test is a chemical analysis of breath exhaled from a person's lungs through a tube into a balloon-type container." In other words, the machine analyzes a sample of breath to determine the alcoholic content of the blood. See also State v. Baker, 56 Wash.2d 846, 355 P.2d 806.

The record shows that Trooper Soperla, who gave the test, attended the breathalyzer school as required by the State at Troop H headquarters in St. Joseph, Missouri, where he had a six-day course in January, 1966, in the operation of the breathalyzer, and that he had conducted such tests thereafter in line of his duty as a member of the State Highway Patrol. Following this schooling he was given and successfully passed tests to determine his proficiency and ability to operate the machine, and he received a permit from the State Board of Health authorizing him to operate the breathalyzer 900, which was the machine used in this instance. This permit (Exhibit 1) is as follows:

### DEPARTMENT OF PUBLIC HEALTH AND WELFARE OF MISSOURI DIVISION OF HEALTH
### PERMIT

### TYPE III

Leroy T. Soperla

is hereby authorized to operate the following breath analyzer devices:

Breathalyzer 900

for the determination of the alcoholic content of blood from a sample of expired (alveolar) air. Issued under the provisions of Section 564.441 and 564.442 R.S.Mo.Supplement 1965.

Date: 1–19–66

Number: 291

Expires: 1–19–68

L. M. Garner, M.D.
Director

In describing the operation of the machine and his procedure in giving the test, Trooper Soperla stated that the machine works on electricity, has lights and a temperature gauge, that he plugged it in and allowed it to warm up to 50 degrees centigrade; the air chamber was purged or cleaned of any stale air, and fresh air was put in the instrument. A fresh ampule of chemical was inserted in the machine and after a minute and a half he turned the switch and set the hands on zero (a double zero reading), after which defendant blew his breath into the machine. The breath sample was passed through the chamber and through the chemical in the ampule. After waiting one and one-half minutes, a reading of defendant's breath was taken, showing between .26 and .27 alcoholic content.

The test was given at the State Highway Patrol office, following methods as taught and approved at the breathalyzer school, using the breathalyzer 900, which was the machine designated and approved by the State Division of Health. It is an electrically-operated machine, and when Officer Soperla plugged it in, the lights came on, the machine's temperature gauge indicated when it had reached the required temperature of 50 degrees centigrade, and it recorded the alcoholic content of defendant's breath to be .11 to .12 above the statutory maximum for safe driving ability. The undisputed facts show that the breathalyzer was operating normally and this evidence constitutes at least a prima facie showing that it was in proper working order and that its computation of alcohol in defendant's breath was correct, and its analysis fully confirmed the physical observations of the arresting officers regarding defendant's condition.

■ Defendant further claims error in that there was no showing by the State that he had not taken any food or drink within fifteen minutes before the test. Defendant did not produce any expert testimony or any evidence whatever that the methods used to test the breath sample were improper, or that defendant had any food or drink within the fifteen-minute period before the test, or that this would affect the result. The record does show that defendant was under arrest and in the actual custody of the arresting officers thirty-five to forty minutes before the test was given, so that they had ample time to observe whether he had taken any food or drink or done anything else that might have influenced the test. In determining the sufficiency of the evidence to support the finding of the trial court, all of the substantial evidence offered by the State must be taken as true, together with all reasonable inferences to be drawn therefrom. State v. Whitaker, Mo., 275 S.W.2d 316; State v. Grove, Mo., 204 S.W.2d 757. We find that the record supports the action of the trial court in holding that Officer Soperla was qualified by experience and training to give the breathalyzer test, that the machine was working properly when the test was taken, and that under the evidence defendant was operating his automobile in an intoxicated condition, which was confirmed by the breathalyzer findings.

Defendant's contention that the court erred in admitting State's Exhibit 1 (Trooper Soperla's permit) is based on the fact that it bears only the facsimile signature of "L. M. Garner, M.D." as director of the Division of Health, and that it does not bear a seal, and is not exemplified, authenticated or certified.

■ Section 564.441 provides that "The state division of health is authorized * * * to ascertain the qualifications and competence of individuals to conduct analysis, and to issue permits which shall be subject to termination or revocation by the state division of health." As evidence of Trooper Soperla's qualifications and au-thority to give such tests on the breathalyzer 900, he was given the permit, Exhibit 1, bearing the facsimile signature of the director of the Division of Health. In support of his contention that this was insufficient, defendant cites Section 1.020 (17) on statutory definitions, which provides as follows:

"1.020. Definitions.

As used in the statutory laws of this state, unless otherwise specially provided or unless plainly repugnant to the intent of the legislature or to the context thereof:

\* \* \* \* \* \*

"(17) 'Written' and 'in writing' and 'writing word for word' shall include printing, lithographing, or other mode of representing words and letters but in all cases where the signature of any person is required, the proper handwriting of such person, or his mark, shall be intended;"

The legislature did not use the words "written", "in writing", etc., found in the above section to describe or qualify the "permit" referred to in Section 564.441, and defendant cannot insist on a limitation which the legislature obviously did not intend.

■ Defendant next contends that the record does not show that the Director's facsimile signature was filed with the Secretary of State pursuant to Section 105.274, therefore, the permit was rendered invalid. Section 105.274 provides:

"Any authorized officer, after filing with the secretary of state his manual signature certified by him under oath, may execute or cause to be executed with a facsimile signature in lieu of his manual signature

(1) Any public security, provided that a least one signature required or permitted to be placed thereon shall be manually subscribed; and

(2) Any instrument of payment. Upon compliance with sections 105.273

to 105.278 by the authorized officer, his facsimile signature has the same legal effect as his manual signature."

Since this permit to give a breathalyzer test is neither a "public security" nor "an instrument of payment", it is not within the purview of this section.

The use of facsimile signatures by public officials has become a modern necessity, which the courts have approved, unless expressly prohibited by law. In Hewel v. Hogin, 3 Cal.App. 248, 84 P. 1002, the lithographic signature of the secretary of an irrigation district was held sufficient when adopted by him. See also Hill v. United States, 7 Cir., 288 F. 192.

We hold that the court did not err in admitting the permit, Exhibit 1, in evidence, and that its issuance was within the authority granted by the legislature. We further rule that under the evidence the facsimile signature of the director was sufficient to establish the authority and qualification of Trooper Soperla to administer the breathalyzer test.

The judgment of the learned trial court is fully supported by the evidence and is affirmed.

All concur.