People of the State of Illinois, Plaintiff-Appellee, v. Charles R. Krueger, Defendant-Appellant.

Gen. No. 51,992.

First District, First Division.

September 23, 1968.

Manuel S. Hoffman, of Chicago, for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and John M. Goldberg, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE MURPHY delivered the opinion of the court.

In a jury trial, defendant was convicted of driving while under the influence of intoxicating liquor in violation of section 47 of the Uniform Act Regulating Traffic (Ill Rev Stats 1965, c 95½, ¶ 144). He was fined $150 and costs. At the beginning of the trial and on motion

of the State, a charge of failure to have a vehicle sticker was dismissed, and the jury found the defendant not guilty of the charge of failure to stay in lanes.

Defendant's contentions on appeal include (1) that the complaint was defective in that it did not allege that the offense took place in Cook County; (2) numerous prejudicial trial errors; and (3) that he was not proved guilty beyond a reasonable doubt.

The court denied defendant's pretrial motion to suppress the results of the breathalyzer test, physical performance tests and alcohol influence test, and any other evidence obtained as a result of an "illegal arrest."

On February 11, 1966, at approximately 11:45 p. m., defendant was driving his automobile in the City of Chicago westbound on Lawrence Avenue in the right-hand lane. He was being followed in the left-hand lane by Chicago Police Officer William Sheldon. The officer testified that he observed defendant swerve suddenly from the right-hand lane into the lane in which the officer was proceeding, and after following defendant for two or three blocks the officer put on his Mars light and stopped the defendant, intending to ask him why he had suddenly swerved. When defendant stepped from his car, the officer smelled alcohol on his breath and noticed a swaying motion in his walk. He then placed defendant under arrest for driving while under the influence of liquor. Defendant was transported to the Chicago 20th District police station by squad car. At the station the defendant told him he had had three or four beers. The officer stated that the defendant's eyes were watery and bloodshot, his face was flushed, his clothing was soiled and mussed. The officer described certain physical tests given defendant, the results of which indicated to him that the defendant was intoxicated.

Officer Sheldon further testified that he had occasion to observe two to three hundred persons who were under

the influence of intoxicating liquor and, in his opinion, defendant was under the influence of intoxicating liquor and unfit to drive on the night in question. On cross-examination he stated that on February 11, 1966, he had been on the police force for approximately eleven months, during which time he had made ten to fifteen arrests for driving under the influence of alcoholic liquors.

At the police station the defendant was given a "breath-alyzer" test by Police Officer Alfred Leisz. The officer testified that the test resulted in a reading of .230% of blood alcohol, which he recorded on the alcoholic influence report.

■ Considered first is defendant's contention that the complaint was fatally defective because it shows that the offense took place upon a highway between 1500 and 1600 West Lawrence but failed to state the county in which the offense took place. We note that the caption of the complaint includes "1st Municipal District, Circuit Court of Cook County, Illinois," and the body of the complaint states that "the offense occurred 'upon a public highway of this State' between '1300 and 1600 West Lawrence' which is 'situated within the corporate limits of the City of Chicago aforesaid.'" This same contention was recently found to be without merit in People v. Williams, 37 Ill2d 521, 524, 229 NE2d 495 (1967), and that decision is controlling here.

■ Next considered is defendant's contention that his motion to suppress the evidence was improperly denied because it was illegally acquired. Defendant argues that his arrest was made on mere suspicion and without probable cause. We believe that Officer Sheldon's observance of defendant's erratic driving, plus the odor of liquor, was reasonable ground to believe that defendant was driving under the influence of intoxicating liquor. We find that defendant's arrest was lawful.

■ Defendant next contends that the evidence against him could not be used because it was acquired

436

without proper warning or protection of his constitutional rights. Defendant cites Miranda v. Arizona, 384 US 436 (1966), where the court stated (p 479):

"But unless and until such warnings and waiver are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against him."

As to his custodial interrogation, the record does not show any warning to defendant by Officer Sheldon of his constitutional rights. However, defendant does not indicate what part of his interrogation he considers to be self-incriminating. With the exception of stating he had three or four beers, defendant's answers appear to be nonincriminating. We find no prejudicial error here.

■ As to the physical tests made by Officer Sheldon, the pronouncements made in Schmerber v. California, 384 US 757 (1966), apply here. That case dealt with the taking of a blood sample from a drunk driving suspect over his objection and with the use of reasonable force. In Schmerber, the court stated (p 761):

"We hold that privilege protects an accused only from being compelled to testify against himself, or otherwise provide the State with evidence of a testimonial or communicative nature, and that the withdrawal of blood and use of the analysis in question in this case did not involve compulsion to these ends. . . . The officer's direction to the physician to administer the test over petitioner's objection constituted compulsion for the purposes of the privilege. The critical question, then, is whether petitioner was thus compelled 'to be a witness against himself.' "

And on page 764, the court stated:

"[B]oth federal and state courts have usually held that it [Fifth Amendment] offers no protection

437

against compulsion to submit to fingerprinting, photographing, or measurements, to write or speak for identification, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture."

■ We find no error in admitting the testimony of Officer Sheldon as to the sobriety tests made at the police station and the results thereof.

Next considered is defendant's contention that the result of the "breathalyzer" test was improperly admitted into evidence. Officer Leisz, who administered the breathalyzer test to defendant at the police station, testified that he had been a police officer for eleven years, and that he had been with the "Evidence Technician Department" for a year and half. His duties included the giving of breathalyzer tests. He had taken a 44-hour course in the operation of the machine at the Chicago Police Academy. He had a certificate from the Indiana University as a certified breathalyzer officer. He had the machine with him when he testified, and he explained its use and stated that the reading of defendant's test of .230 was a proper reading. He was not a chemist nor an engineer nor a physician.

He was cross-examined at length. He did not know the trade name of the breathalyzer that he was using. He did not know "the amount of alcohol in this man's blood" except by reading the machine. Nor did he have any knowledge as to whether the chemicals used had been tested for their potency or whether the machine had been tested for accuracy.

The court, after observing that the officer was not a chemist and not qualified to answer questions concerning the chemical reaction taking place in the machine, permitted his testimony as to the breathalyzer reading of .230 to stand.

On this point, defendant's authorities include Fortune v. State, 197 Tenn 691, 277 SW2d 381 (1955); State v. Minnix, 101 Ohio App 33, 137 NE2d 572 (1956); Hill v. State, 158 Tex Crim 313, 256 SW2d 93 (1953); and People v. Davidson, 5 Misc2d 699, 152 NYS2d 762 (1956). Also, "Defense of Drunk Driving Cases," by Richard E. Erwin, 1st Edition (1963).

These earlier cases from jurisdictions other than Illinois, which dealt with breathalyzer evidence, required rather strict proof of the proper condition of the machine and the chemicals it employed. This seems to have been one aspect of the skepticism which surrounded the use of an unfamiliar and technical device. Representative of this attitude is State v. Baker, 56 Wash2d 846, 355 P2d 806 (1960), a negligent homicide case cited by the defendant. The opinion discusses four checks upon the accuracy of breathalyzer evidence: (1) that the machine was examined and found to be in proper working order when the test was made; (2) that chemicals used were of the proper kind and proportion; (3) that the subject had nothing in his mouth at the time of the test and did not eat or drink within fifteen minutes prior to the test; and (4) that the test was properly given by a qualified operator. The court stated (p 810):

"The expert testimony introduced by the state in this case pertaining to the breathalyzer and its operation shows that unless the above four requirements are satisfied, the result of the test is wholly unreliable. We therefore hold that before the result of a breathalyzer test can be admitted into evidence, the state must produce prima facie evidence that each of the four requirements listed above have been complied with."

In Illinois, section 47(b) of the Uniform Act Regulating Traffic (1965) states:

"[E]vidence of the amount of alcohol in the person's blood at the time of the act alleged as shown by a chemical analysis of his breath, blood, urine, saliva or other bodily substance is admissible, and the result of any such analysis shall give rise to the following presumptions:

". . .

"(3) If there was 0.15 percent or more by weight of alcohol in the person's blood, it shall be presumed that such person was under the influence of intoxicating liquor."

Illinois cases have not laid down any specific foundation requirements for the admission in evidence of breathalyzer tests. The leading case on drunkometer or breathalyzer tests in Illinois is People v. Bobczyk, 343 Ill App 504, 99 NE2d 567 (1951). There the court held that the result of the drunkometer test was admissible in evidence and said (p 510) :

"Defendant argues that there is a lack of unanimity in the medical profession as to whether intoxication can be determined by breath. Even so we think this objection goes to the weight of the testimony and does not destroy its admissibility."

As to the breathalyzer test, defendant further contends that where prima facie evidence of a defendant's guilt is set out in a statute, the State must prove every element of the statutory requirements of the offense. Here the statute stated, "If there was 0.15 percent or more by weight of alcohol in the person's blood, it shall be presumed that such person was under the influence of intoxicating liquor." Defendant asserts that the statute specifically requires that the percentage of alcohol be by weight, and in this case there was no evidence indicating

whether the measurement was in terms of weight or volume.

Officer Leisz testified that "Above the gauge on the face of the machine are written the words 'per cent blood alcohol.' Yes, when I say per cent blood alcohol, I am referring to the words that are written above the gauge." Although the officer did not testify that the gauge reading of .230 was by weight of alcohol in the defendant's blood, we believe, and in the absence of any evidence to the contrary it was a reasonable assumption by the trial court, that the words on the machine, "per cent blood alcohol," were based on the statutory requirement of weight.

 We agree with the State that the competency of Officer Leisz to testify was a question of fact for the trial judge and was a matter largely within his discretion. It is sufficient that the expert is familiar with the device and its operation, and the weight to be given to the question of the expert's competency is for the trier of the fact. Any questions raised as to the proper functioning of the device are likewise to be resolved by the trier of the fact. (People v. Abdallah, 82 Ill App2d 312, 226 NE2d 408 (1967).) In this case the court permitted extensive cross-examination of Officer Leisz, both as to his chemical knowledge and the operation of the machine, and we think the record shows that Officer Leisz was sufficiently trained and skilled in the use of the breathalyzer. He had a practical knowledge of its operation sufficient to administer the test. The machine reading of .230 was not based upon any formula, chart calculation or translation made by the officer. He stated the machine was in proper working order, and the record shows no evidence to the contrary. We conclude the officer's testimony was sufficient to come within the provisions of section 47 (b).

 Having determined that the testimony as to the breathalyzer reading was properly admitted into evidence,

441

we find an instruction on the statutory presumption of intoxication was proper here. People v. Schneider, 362 Ill 478, 485, 200 NE 321 (1936).

 Next considered is defendant's contention that he was not proved guilty beyond a reasonable doubt. The facts upon which Officer Sheldon based his opinion that the defendant was unfit to drive and was under the influence of liquor included the observation that "the defendant's eyes were watery and bloodshot. His face was flushed." While under cross-examination, Officer Sheldon stated, "From my observations of the defendant today, I would say his face is flushed or reddened. I would say that it is possible that his face today looks like it did on the night of February 11, 1966. His eyes today are bloodshot and similar to the appearance of his eyes on the night in question. . . . I knew he was a painter and that he had worked that day. His clothes were not disarranged or disorderly; they were just mussed and soiled." In our opinion, the observations of the arresting officer on which he based his opinion that defendant was under the influence of liquor were sufficient evidence on which the jury could find that the defendant was guilty of driving under the influence of liquor beyond a reasonable doubt. It was within the jury's province to determine the credibility of the police officers and to accept what testimony they believed and reject what testimony they did not believe. Where the guilt or innocence of defendant depends upon the credibility of conflicting testimony, a reviewing court will not substitute its judgment for that of the jury. People v. Raddle, 39 Ill App2d 265, 188 NE2d 101 (1963).

 As to trial errors, we agree with defendant that it was improper for the State's Attorney to make inflammatory remarks and innuendoes in cross-examining the defendant, especially in those questions which were not followed by the introduction of evidence on those

points. We also agree that it was improper for the State's Attorney to express to the jury, in final argument, his own individual opinion of the guilt of the accused. However, the record shows that the trial court promptly sustained objections to the questioned remarks and conduct of the State's Attorney. We agree that the redirect examination of a witness is limited to those new matters raised on cross-examination, and a review of substantially all the witnesses' direct testimony is improper. (Schmitt v. Chicago Transit Authority, 34 Ill App2d 67, 73, 179 NE2d 838 (1962).) We have examined the testimony of the two police officers, and we find no abuse of discretion here.

 Defendant complains that during the trial the court commented that the charge was not a crime but merely a misdemeanor, and the State referred to the traffic violation as "a quasi-criminal case." Defendant argues that the charge was a crime, and the comments by the State's Attorney and the court had a tendency to lead the jury to believe the charge of driving while under the influence of liquor was a mere offense which probably carried with it a modest fine upon conviction. We find no prejudice to defendant in this exchange of terms and are not persuaded that they had any effect on the jury's verdict.

Defendant further states that the jury foreman brought with him into the jury room a volume of the Encyclopedia Brittanica, from which he read portions to the other jurors on the topic of drunkenness and passed the book around for the other jurors to read. An affidavit to this effect was filed with defendant's motion for a new trial.

 We agree that it is error to permit a jury to take with them into the jury room, during deliberations, matter which was not admitted into evidence. However, as the State contends, "it has always been held that

the verdict of jurors cannot be impeached even by their own affidavit or testimony." People v. Stacey, 25 Ill2d 258, 270, 184 NE2d 866 (1962).

 Defendant also complains that he was prejudiced by a newspaper article which implied that juries were too soft on drunken drivers. The article, which appeared during defendant's trial, was general in its nature and did not carry any reference to the instant defendant but to a class of traffic violators. Even if read by members of the jury, of which there is no showing, we are not persuaded that such newspaper columns are prejudicial per se to defendants who happened to be on trial for conduct which is the target of the article. (People v. Brinn, 32 Ill2d 232, 238, 204 NE2d 724 (1965).) In the absence of an affirmative showing here that defendant was prejudiced by the newspaper article, we find no ground for reversal on this point.

We conclude that defendant received a fair trial. The evidence justified the verdict and, as we find no reversible error, the judgment of the Circuit Court is affirmed.

Affirmed.

BURMAN, P. J. and ADESKO, J., concur.