William C. WESTER, Appellant,

v.

STATE of Alaska, Appellee.

No. 2159.

Supreme Court of Alaska.

Dec. 6, 1974.

Hal R. Horton, Anchorage, for appellant.

Stephen G. Dunning, Asst. Dist. Atty., Joseph Balfe, Dist. Atty., Anchorage, Norman Gorsuch, Atty. Gen., Juneau, for appellee.

Before RABINOWITZ, C. J., and CONNOR, ERWIN, BOOCHEVER and FITZGERALD, JJ.

## OPINION

BOOCHEVER, Justice.

Based on the manner in which evidence of a breathalyzer test was presented and the sufficiency of that evidence, Wester here challenges his conviction for driving

while under the influence of an intoxicating beverage. He was operating a motor vehicle in a parking lot between Fifth and Sixth Avenues at Fairbanks Street in Anchorage shortly after midnight on April 27, 1972. In an apparent attempt to free the automobile from loose gravel, appellant was rocking it back and forth.

The rocking was observed by Officer John P. Wojciechowski who investigated and found Wester had a strong odor of intoxicating beverage on his breath, glassy eyes and seemed to stumble as he emerged from the vehicle.

After field sobriety tests (finger-to-nose and balance-on-one-foot) were administered, Wester was arrested and charged under AS 28.35.030 for operating a motor vehicle while under the influence of intoxicating beverage. Subsequent to the arrest, he was taken to the police station and a breathalyzer test was given.

The test is well described by the Washington Supreme Court in State v. Baker [1] as follows:

> The breathalyzer is a machine designed to measure the amount of alcohol in the alveolar breath and is based upon the principle that the ratio between the amount of alcohol in the blood and the amount in the alveolar breath from the lungs is a constant 2100 to 1. In other words, the machine analyzes a sample of breath to determine the alcoholic content of the blood. . . .

> To operate the machine, the subject blows into the machine through a mouthpiece until he has emptied his lungs in one breath. The machine is so designed that it traps only the last 52½ cubic centimeters of air that has been blown into it. This air is then forced, by weight of a piston, through a test ampoule containing a solution of sulphuric acid and potassium dichromate. This test solution has a yellow hue to it. As the breath sample bubbles through the test solution, the sulphuric acid extracts

the alcohol, if any, therefrom, and the potassium dichromate then changes the alcohol to acetic acid, thereby causing the solution to lose some of its original yellow color. The greater the alcoholic content of the breath sample, the greater will be the loss in color of the test solution. By causing a light to pass through the test ampoule and through a standard ampoule containing the same chemical solution as the test ampoule (but through which no breath sample has passed), the amount of the change in color can be measured by photoelectric cells which are connected to a galvanometer. By balancing the galvanometer, a reading can be obtained from a gauge which has been calibrated in terms of percentage of alcohol in the blood.

The jury trial in the District Court, Third Judicial District, resulted in a verdict of guilty as charged. Final sentencing and judgment were entered on May 24, 1973. Appeal was filed and the superior court affirmed on February 1, 1974. Wester thereafter filed a timely appeal to this court, focusing upon three essential steps in maintaining that the breathalyzer test results were inadmissible: (1) the proper calibration of the breathalyzer machine, (2) the certification of the ampules, and (3) the proper administration of the test.

## I

## ADMISSION OF EVIDENCE AS OFFICIAL RECORDS

Lt. Duley, who conducted the breathalyzer test of Wester, appeared as a witness for the state, but the state did not produce as witnesses the individuals who calibrated the machine and who tested sample ampules. Wester urges that personal testimony regarding the calibration and the certification of ampules is needed to establish the foundational basis for admission into evidence of the breathalyzer results. The highly technical nature of the data, he contends, necessitates personal testimony. Here Dr. C. D. King, the laboratory tech-

1. 56 Wash.2d 846, 355 P.2d 806, 809 (1960).

nician at the Department of Public Safety, had examined ten ampules bearing the same lot number as that of the ampule used in Wester's examination and certified as to their accuracy. Officer Kohlhase had performed the calibration tests on the particular breathalyzer machine used here. According to Kohlhase's certificate, the calibration tests indicated no deviation from the normal.

The trial court admitted into evidence certified documents including the two authenticated copies of the testing certificates under the official records exception to the hearsay rule. The reliability and trustworthiness of official documents and also the desire to keep officials from having to testify personally in every instance have generally been established as the policies underlying this hearsay exception.[2] In its ruling, the trial court relied on Alaska R.Civ.P. 44(b).[3]

Wester maintains that the reliability of the breathalyzer or ampules may not be established by certified documents. In supporting his contention that the proper working order of the machine and chemical mixture of the ampules require very strict proof, Wester cites early cases[4] which evinced an apparent skepticism toward the use of an unfamiliar and technical device.[5] The reliability of the breathalyzer has enjoyed increasing acceptance,[6] however, and chapter 30 of title 7 of the Alaska Administrative Code authorizes and approves the use of the breathalyzer in this state. The Alaska Legislature, furthermore, has specified the foundational facts necessary for the admissibility of a chemical analysis of breath in AS 28.35.033(d).[7] The statute, however, does not specify the method of proof of the foundational facts, which is controlled by the applicable rules of evidence. In this case, Alaska R.Civ.P.

2. *See generally* Wigmore, Evidence § 1633 (3d ed. 1940) and 2 Wharton's Criminal Evidence, § 290 (13 ed. 1972).

3. Alaska R.Civ.P. 44(b):
 Official Records.
 (1) *Admissibility.* Writings offered as memoranda or records of acts, conditions, events or findings of fact made by a public official of the United States or a state, territory or jurisdiction of the United States, are admissible as evidence of the facts stated therein, if the court finds that the making thereof was within the scope of the duty of such officials; . . .
 \* \* \* \* \*
 (4) *Authentication of Copy.* An official record or an entry therein, when admissible for any purpose, may be evidenced by an official publication thereof or by a copy attested by the officer having the legal custody of the record, or by his deputy, and accompanied with a certificate that such officer has the custody.
 Alaska R.Crim.P. 26(e):
 Proof of Records. An official or business record or an entry therein or the lack of such a record or entry may be proved in the same manner as in civil actions.

4. Fortune v. State, 197 Tenn. 691, 277 S.W.2d 381 (1955); State v. Minnix, 101 Ohio App. 33, 137 N.E.2d 572 (1956); Hill v. State, 158 Tex.Cr.R. 313, 256 S.W.2d 93 (1953); People v. Davidson, 30 Misc.2d 955, 152 N.Y.S.2d 762 (N.Y.Co.Ct.1956).

5. *See* R. Erwin, Defense of Drunk Driving Cases (1st ed. 1963).

6. State v. Miller, 64 N.J.Super. 262, 165 A.2d 829, 832–833 (1960); People v. Donaldson, 36 A.D.2d 37, 319 N.Y.S.2d 172, 176 (N.Y.App.1971); People v. Morris, 63 Misc. 2d 124, 311 N.Y.S.2d 53, 56 (N.Y.Dist.Ct. 1970); Pruitt v. State, 216 Tenn. 686, 393 S.W.2d 747, 750 (1965). *See also* People v. Krueger, 99 Ill.App.2d 431, 241 N.E.2d 707, 711 (1968).

7. AS 28.35.033(d) provides:
 (d) To be considered valid under the provisions of this section the chemical analysis of the person's breath shall have been performed according to methods approved by the Department of Health and Social Services. The Department of Health and Social Services is authorized to approve satisfactory techniques, methods, and standards of training necessary to ascertain the qualifications of individuals to conduct the analysis. If it is established at trial that a chemical analysis of breath was performed according to approved methods by a person trained according to techniques, methods and standards of training approved by the Department of Health and Social Services, there is a presumption that the test results are valid and further foundation for introduction of the evidence is unnecessary.

44(b) affords a method of proving the calibration of the breathalyzer machine and the certification of the ampules.

Defense counsel [7A] could have inspected the official records in question prior to trial, and if she wished to challenge their accuracy, she could have taken the deposition of the calibrator and the chemist or called them as witnesses at the trial. She probably could also have obtained samples of ampules bearing the same lot number and have had them tested by her own expert.[8]

Wester contends that AS 28.35.033(d) demands rigid compliance with the methods of breathalyzer examination approved by the Department of Health and Social Services. To buttress his claim of the necessity of strict proof of foundational facts, appellant adverts to Estes v. State.[9] In that case it was held that a letter written to the police department by the Chief of the Bureau of Identification and Records—stating that the examination of the defendant's blood showed an alcohol content indicating intoxication—and certification of the report by the Assistant Chief of the Bureau of Identification and Records of the Department of Public Safety was inadmissible into evidence over a hearsay objection. It has been argued, however,[10] that Estes is illustrative of the mid-1950's cases in which scientific data was viewed askance by the courts and subjected to rigorous demands of proof. The increasing

reliance upon and the increasing reliability of scientific devices deflate the status of cases such as Estes,[11] insofar as laboratory findings of fact are concerned. The opinion expressed in the Estes report as to the defendant's intoxication, however, was not a finding of fact justifying the admissibility of official records, and to that extent we would agree with the result in that case. The distinction as to the type of record admissible under Rule 44(b) is illustrated by our decision in Menard v. Acevedo, 418 P.2d 766 (Alaska 1966). In that ruling we held as inadmissible into evidence, in a civil action arising out of a motor vehicle accident, the written report made by an investigating state police officer concerning the accident. That case falls squarely in the mainstream of decisions which have held investigation and accident reports inadmissible. In Menard we relied on a statutory proscription [12] bolstered by the general policy that accident reports are often colored by an officer's exercise of judgment and discretion, and many times incorporate opinions and conclusions which may be gathered from random second-hand sources.[13] The documents of King and Kohlhase, however, are clearly not subject to these objections.

More pertinent to the admissibility of the authenticated copies of the certified documents of King and Kohlhase than the cases cited by Wester is the decision of the Oregon Supreme Court in State v.

**7A.** At his trial, Wester was represented by counsel other than the attorney handling his appeal.

**8.** See United States v. Bentvena, 193 F.Supp. 485, 498 (S.D.N.Y.1960); United States v. Taylor, 25 F.R.D. 225, 227–228 (E.D.N.Y. 1960). See also Alaska R.Crim.P. 16.

**9.** 162 Tex.Cr.R. 122, 283 S.W.2d 52 (1955).

**10.** See R. Erwin, Defense of Drunk Driving Cases (1st ed. 1963), cited in People v. Krueger, 99 Ill.App.2d 431, 241° N.E.2d 707, 711 (1968).

**11.** On the reliability of the breathalyzer and the proposition that expert testimony should not be required to establish that the device is indeed reliable, see People v. Donaldson, 36 A.D.2d 37, 319 N.Y.S.2d 172, 176 (N.Y.App.

1971); People v. Morris, 63 Misc.2d 124, 311 N.Y.S.2d 53, 56 (N.Y.Dist.Ct.1970).

**12.** With reference to the investigatory officer's report, AS 28.35.120 provides:
No report made in accordance with this chapter may be used in evidence in a criminal or civil action arising out of the accident that is the subject of the report.

**13.** Cf. Commonwealth v. McCloud, 322 A.2d 653 (Pa.1974), where it was held that although it was proper to admit an autopsy report into evidence in a homicide case to show the fact of death and that an autopsy had been performed, the report was inadmissible because it included an opinion as to the cause of death, a material element of the crime charged.

Woodward [14] wherein the sole assignment of error on appeal to the Oregon Supreme Court was the admission into evidence of a certified copy of an official record of the Oregon State Board of Health. The objection was based upon hearsay grounds, but the court held the evidence admissible as showing the state's compliance with applicable regulations in regard to the administration of the alcohol breath testing equipment there employed.[15]

The decision was echoed in State v. Coffman[16] wherein the court viewed *Woodward* as holding that:

> [A] certificate that a certain breathalyzer machine had been tested and found accurate could be received in evidence as an exception to the hearsay rule.[17]

Over a hearsay objection that the particular ampule used did not come from the lot tested, the court in *Coffman*, a driving-while-intoxicated case, admitted a public officer's certificate which stated that the ampules of one lot all bore the same identification number, and one or more of the ampules had been tested. The document objected to was similar to that of Dr. King in the instant case.[18]

With the increasing acceptance and reliability of the breathalyzer has come a relaxation of any notion of rigid proof of foundational facts. In this respect, ampule certification and breathalyzer calibration need not be the subject of personal testimony and are clearly admissible under the official records exception to the hearsay rule. The evidence was not of the direct testing of Wester, but involved results of the tests pertaining to the reliability of the machine and ampules used. Those tests were performed by technicians who should not be compelled to testify in every case. These documents are the exact type that are normally reliable and trustworthy so as to give rise to the official records exception to the hearsay rule. The admission into evidence of the authenticated copies of certified documents was not error.[19]

## II

## THE FIFTEEN-MINUTE OBSERVATION PERIOD

In substance, Wester contends that AS 28.35.033(d) was not complied with in that the breathalyzer test was not performed according to approved methods; and its

---

14. 1 Or.App. 338, 462 P.2d 685 (1969).

15. The court relied on the official records exception to the hearsay rule that was expressly codified in ORS 43.330. *Id.* 1 Or. App. 338, 462 P.2d at 687. *See also* Duff v. State, 503 S.W.2d 785, 787 (Tex.Cr.App. 1974). Officer Kohlhase's document presents the same issue in the instant case.

16. 502 P.2d 605 (Or.App.1972).

17. *Id.* 1 Or.App. 338, 462 P.2d at 606 n. 1.

18. The *Coffman* court remarked further that this exception to the hearsay rule was accepted even in State v. Baker, 56 Wash.2d 846, 355 P.2d 806 (1960), on which Wester relies heavily and which otherwise toed a line of very strict proof regarding the foundational facts necessary for the admissibility of breathalyzer test results. As support for its ruling, *Coffman* cites: State v. Rines, 269 A.2d 9 (Me.1970); State v. Becker, 429 S.W.2d 290 (Mo.App.1968); State v. Miller, 146 N.W.2d 159 (N.D.1966); City of Bremerton v. Osborne, 66 Wash.2d 281, 401 P.2d 973 (1965). *See also* State v. McKay, 515 P.2d 183 (Or.

App.1973); State v. Kaser, 515 P.2d 1330 (Or.App.1973).

19. The trial judge was influenced by the final sentence of AS 28.35.033(d), which states:

> [i]f it is established at trial that a chemical analysis of breath was performed according to approved methods by a person trained according to techniques, methods and standards of training approved by the Department of Health and Social Services, there is a presumption that the test results are valid and further foundation for introduction of the evidence is unnecessary[,]

in admitting the breathalyzer test results. The testimony of the administrator of the test was clearly necessary to establish the foundational fact that the test was "performed according to approved methods and performed according to techniques. . . . " While it is required that a qualified witness explain the functional effect of the chemical testing, personal testimony is not required as to the calibration of the instrument or the accuracy of the ampules. In the instant case, furthermore, the administrator of the test was qualified to inform the jury as to the rationale of the breath test.

results, therefore, are inadmissible. The qualifications of the administrator of the examination are set down in 7 AAC 30.030. Lt. Duley testified as to his qualifications and was subjected to cross examination; the court determined Duley to be a qualified operator.

■■■ Wester does not here challenge Duley's qualifications, but centers on the specifications of 7 AAC 30.020,[20] seeking to demonstrate non-compliance with the 15-minute observation period of 7 AAC 30.020(2).[21] In arguing that the failure to demonstrate compliance with this section dictates the inadmissibility of the test results, Wester points to State v. Baker.[22] We agree with appellant and the *Baker* decision that compliance with the 15-minute observation period prior to the administration of the breathalyzer test is a requirement for the admissibility of the test results. We hold, however, that where substantial compliance with the 15-minute provision is established on the record, as here, a prima facie showing of the foundational fact necessary to establish admissibility is satisfied.

*Baker*, significantly, was a first impression breathalyzer case in Washington. The court there noted that, since the breathalyzer was in its embryonic stage and its results were thought to be unreliable except under rigid testing circumstances, it would require prima facie evidence on each of four points in order to allow into evidence the results of the test.[23] In imposing a stringent 15-minute requirement for admissibility, the court was influenced by a number of factors: an ob-

vious hesitancy to embrace the breathalyzer, defendant's own testimony that he had been taking and indeed had medicine in his mouth prior to the administering of the test and the possibility on the record that the observation period may have been only 14 minutes.

While we do not wish to undermine the status of the observation period as a necessary foundational fact in the introduction of the breathalyzer test results, we do conclude that a rigid standard of proof of this foundational fact is unnecessary.[24]

■■■ In *Baker* and Pruitt v. State [25] cited by Wester as supportive of a strict 15-minute provision, a confluence of factors dictated inadmissibility. Moreover, a more recent case decided by the Washington Supreme Court, State v. Moore,[26] suggests a relaxation of the rigors of *Baker*. Conflicting evidence as to whether a cigar was smoked immediately prior to performing the test was not enough to invoke *Baker* and hold the test results inadmissible where the factual effect upon the results of the test was not shown. Wester here has indeed demonstrated the factual effect of ingestion during the quarter-hour observation period, but there is no evidence that appellant had eaten or drunk (or corrupted in any other way the test results) within this period. Lt. Duley was questioned on the 15-minute observation period provision during cross-examination. He indicated that the observation is normally the responsibility of the arresting officer. Although Duley did not personally observe Wester for 15 minutes prior to the breathalyzer test in the instant case, it is infera-

---

20. A 13-point procedural check list for the blood alcohol analysis is sketched in 7 AAC 30.020.

21. 7 AAC 30.020(2) requires that the tester: observe the subject to be tested for at least 15 minutes immediately prior to testing to insure that he does not regurgitate or place anything in his mouth during that period of time;

22. 56 Wash.2d 846, 355 P.2d 806 (1960).

23. *Id.* 56 Wash.2d 846, 355 P.2d at 809–810. The four requirements were: (1) that the machine was properly checked and in proper working order at the time of conducting the

test; (2) that the chemicals employed were of the correct kind and compound in the proper proportions; (3) that the subject had nothing in his mouth at the time of the test and that he had taken no food or drink within 15 minutes prior to taking the test; and (4) that the test be given by a qualified operator and in the proper manner.

24. *See* People v. Meikrantz, 351 N.Y.S.2d 549 (N.Y.Co.Ct.1974).

25. 216 Tenn. 686, 393 S.W.2d 747 (1965). 1965).

26. 79 Wash.2d 51, 483 P.2d 630 (1971).

ble from the record that Wester was under adequate observation by the arresting officer for a sufficient period of time.[27] The mere assertion that ingestion was hypothetically possible ought not to vitiate the observation period foundational fact so as to render the breathalyzer test results inadmissible.

## III

## PROSECUTION UNDER THE STATUTE RATHER THAN THE ANCHORAGE ORDINANCE

Wester contends that to be charged under AS 28.35.030 rather than City of Anchorage Municipal Code 9.28.020 [28] when both provisions apply to the same general facts constitutes an arbitrary application of the law violative of constitutional safeguards of equal protection. The argument is without merit.

 It is settled that an act may be made a penal offense under state statute, and also made punishable under an ordinance of a municipal corporation.[29] Wester interprets City of Anchorage Ordi-

nance No. 1513[30] as manifesting an intention by the city council to have prosecution rendered under city ordinances when their scope is identical to a state law. But Wester's interpretation is assailable as the ordinance merely acknowledges the sovereignty of the state and does not preclude the state's jurisdiction.

Hutcherson v. United States[31] involved alleged due process violations as the appellant in that case was indicted and convicted under a federal statute rather than the District of Columbia Code when the measures were identical but for the more serious penalty provision under the federal statute. The court held appellant's argument untenable: "A defendant has no constitutional right to elect which of two applicable statutes shall be the basis of his indictment and prosecution."[32] This same principle of prosecutorial discretion has been upheld against equal protection challenges.[33]

There was no error by the trial court herein, and the judgment is hereby affirmed.

27. Wojciechowski testified that he arrived at the scene of the arrest at approximately 12:10 a. m. and approximately 30 seconds later Duley and perhaps one other officer arrived on the scene and stayed briefly. Wester was given his *Miranda* rights at approximately 12:25 a. m. and subsequently asked a number of questions. Thereafter, Wester was taken to the Anchorage Police Department where the breathalyzer test was then administered at 12:44 a. m. During the 19-minute interim between the recitation of *Miranda* rights and the administration of the breath test, he was taken to the police station and videotaped.
Duly testified as follows on cross-examination:
Q . . . But you wouldn't, if—he wouldn't have been quite under observation for quite 20 minutes, would he?
A Under my observation?
Q Under anybody's observation?
A Certainly. He was under the officer's observation from the time he left the scene —or as time [sic] the officer arrived at the scene.
Putting aside counsel's suggestion that 20 rather than 15 minutes of observation is needed to satisfy the provision, compliance with the quarter-hour measure and substantiation of Duley's testimony can thus be inferred from

the record and the time notations of Wojciechowski and Duley made explicit therein.
28. Formerly, and cited by appellant as, City of Anchorage Ordinance § 19–13.02. The penalty provision, § 19–13.04, that applies to the ordinance is less severe than its counterpart under the state statute, and this fact serves as the basis of appellant's argument.
29. Guidoni v. Wheeler, 230 F. 93 (9th Cir. 1916).
30. City of Anchorage Municipal Code 1.16.030 (formerly Ordinance No. 1513) provides:
No person shall violate any law of the state of Alaska, nor any rule or regulation adopted by any duly authorized agency of the state of Alaska. Violations of the foregoing shall be violations of this code except where the jurisdiction of the offense is reserved to the state of Alaska.
31. 120 U.S.App.D.C. 274, 345 F.2d 964 (1965).
32. *Id.* 345 F.2d at 967. *See also* Ehrlich v. United States, 238 F.2d 481, 485 (5th Cir. 1956); Deutsch v. Aderhold, 80 F.2d 677, 678 (5th Cir. 1935).
33. United States v. Kuch, 288 F.Supp. 439, 452 (D.C.D.C.1968). *See also* Washington v. United States, 130 U.S.App.D.C. 374, 401 F.2d 915, 922–923 (1968); *cf.* Berra v. United States, 351 U.S. 131, 76 S.Ct. 685, 100 L.Ed. 1013 (1956) (dissenting opinion).