GOVERNMENT OF THE VIRGIN ISLANDS, Plaintiff

v.

SUSTIN MOSES, Defendant

Crim. No. 75-161

GOVERNMENT OF THE VIRGIN ISLANDS, Plaintiff

v.

CEDRIC ROUSE, Defendant

Crim. No. 75-163

District Court of the Virgin Islands

Div. of St. Thomas and St. John

March 16, 1976

GERALD P. BOGGESS, ESQ., Assistant Attorney General, St. Thomas, V.I., *for plaintiffs*

JAMES R. COLEMAN, ESQ., Territorial Public Defender, St. Thomas, V.I., *for defendants*

CHRISTIAN, *Chief Judge*

### OPINION

The identical questions are presented in each of the two appeals before the Court. The respective appellees hailed

before the municipal court on charges of operating motor vehicles while in an intoxicated condition. Both appellees were represented by the same territorial public defender. Although the appeals will be treated together because of the sameness of the issues, they are separate and distinct cases. The events which form the basis of the charges are in no way related.

Each appellee, subsequent to his arrest, was taken to the government hospital where, at the direction of a police officer who had reasonable grounds for believing them to have been driving a vehicle in an intoxicated condition, a blood specimen was drawn for the purpose of having tests conducted to determine the presence of alcohol, by weight, in the blood. The procedure followed by the police officer in each case is authorized by 20 V.I.C. § 483(d) which provides that

> [a]ny person who operates a motor vehicle in the Virgin Islands shall be deemed to have given his consent to a chemical test of his breath, blood, urine or saliva for the purpose of determining the alcoholic ... content of his blood ...

In subsection (e) of the same section, the statute provides that upon the request of the person tested, the results of the tests "shall be made available to him".

It is not contended that the blood specimen was drawn by a person falling outside the categories designated for that purpose in subsection (f).

By pretrial motion each appellee had requested that the government be directed to produce the blood specimen or some of it, so that independent tests might be run by him in the preparation of his defense. The trial court ruled that those motions had been timely made.

In response to the motions to produce the blood samples the government offered testimony to the effect that the eight to ten cc's of blood which had been drawn from each accused had either been used entirely or had been so con-

sumed by the battery of five tests conducted by the government that none, or an insufficient amount was left for further testing. The samples which the government had used in its testing procedures could no longer be deemed blood by virtue of the addition of various chemicals in the course of testing. That substance, whatever it was, and the small residue of blood that might have been left, the government said, had been disposed of before receipt of the request to produce. The government's chemist admitted that there are other known testing procedures which would consume less blood. He went on to say that even if but one cc of blood were available it would suffice for reliable test purposes.

Each appellee in his pretrial motion had moved for sanctions, in the alternative, in the event the specimen demanded was not produced. The trial court was requested to dismiss the complaint, or, failing that, enter an order suppressing all evidence as to the tests and their results. In each case, it might be mentioned that the test revealed a blood alcohol of more than fifteen-one hundredths of one per centum by weight.

So far as I have been able to gather these were first impression issues in the municipal court or indeed in this jurisdiction. The court found and concluded that there was no want of good faith on the part of the government in its destruction or disposal of the specimen or remains thereof. It also further concluded that the challenged statute was in no way constitutionally infirmed on its face. The court did find, however, that the failure of the government to produce specimen for testing as demanded by appellees presented a situation of fundamental unfairness to the extent that a trial of these appellees without the benefit of their individual, independent testing would deprive them of due process of law. The court thereupon dismissed the complaint in each case from which dismissals the government has taken these appeals. We reverse.

On this occasion, perhaps an in depth opinion on the substantial questions raised might be in order. To "make a long story short" we restrict ourselves to a statement of the three grounds of reversal with a minimum of elaboration as to each.

■■ Firstly, the orders of the municipal court dismissing each of these complaints must be reversed for at most the appellees were entitled to an order suppressing all evidence relating to the tests and the results of such tests. Clearly, evidence of chemical tests of a subject's blood is not a necessary element of a prosecution for driving while intoxicated. It is common knowledge that untold numbers of defendants have been properly convicted of that offense long before these tests were perfected generally, and more particularly before they had made their advent on the Virgin Islands scene. Granted the suppression of the blood tests and results, there is no reason why the government should not have been permitted to attempt to prove its case against each accused by whatever other proper means was at its command. It would have been a sufficient sanction if the court had ruled that the appellees were denied the opportunity to conduct tests of the blood samples the government would not be permitted to profit by the tests which it had been able to, and did conduct.

■ Secondly, if the more stringent sanction of dismissal was the appropriate one, since the court was establishing new guidelines, it should have done so prospectively only. This has been the position taken by virtually all courts that have addressed the problem. However desirable it might have been for the court to move in the direction it had in mind, by its retroactive sweep it covered too broad a leap. The government was following its theretofore established practice not previously challenged. It was operating under a statute which in section 493(e) commands that "the results of such tests shall be made available" to the

person tested. There was no such provision with respect to the sample. Had the Legislature desired that specimens as well as the results be made available, it could have readily so stated. Since the trial court concluded that the statute was constitutional it was beyond its competence to amend section 493 as the judge vowed he would, "we will make them put it in the law this morning". (Tr. p. 24.)

Thirdly, I conclude that the trial court erred in making the determination that the imposition of sanctions was proper in this case. It is true that in some of the cases considered by the court where there had been failure to preserve evidence or where evidence had been suppressed by the government, or where notes or other evidence had been intentionally destroyed, sanctions had been imposed at times, without regard to good faith or lack of good faith on the part of the government. However, "circumstances alter cases" and it is clear from our reading of the same cases that it is not every instance in which evidence, tests, specimens, or notes are destroyed that sanctions should be imposed. There was much comment by the trial court that the blood specimens had been furnished with the appellees consent. The materiality of this is not readily apparent for indeed under the statute, the appellees, having undertaken to drive on the public highways, in effect, waived their right to object. They had no choice but to submit to the withdrawal of blood, given the proper hospital setting, Schmerber v. California, cited infra. We are taught by Schmerber that the right against self incrimination is not involved in these cases. I perceive no difference between this case and one in which, let us say, bloody fragments of skin or flesh had been scraped from under a defendant's fingernails or his clothes, and have been chemically tested, let us say for blood type. If the results of such a test showed that the fingernail scrapings, insofar as blood type was concerned, matched that of the murder vic-

tim in a given case, one would not imagine that the cause would be dismissed, or even the evidence suppressed, solely because not enough of the scrapings, which the government's chemist had used, remained to permit independent testing by a chemist engaged for that purpose by the defendant. Given the good faith of the government and the fact that normal and proper procedures were followed by the government in this case, it would seem that any type of sanction must be deemed inappropriate. In concluding otherwise the trial court, it seems, flew straight in the face of U.S. v. Augenblick, 392 U.S. 348 (1969). There the Supreme Court held that where the government adequately explains the destruction or disappearance of evidence, the failure of discovery does not violate due process. A finding that the Government of the Virgin Islands in the instant case did not offer an adequate explanation would be unwarranted on this evidence.

None of the cases cited by counsel on both sides in these appeals when properly read stand for any proposition not in accord with the views briefly set out hereinabove. See Schmerber v. California, 384 U.S. 757 (1966); U.S. v. Bryant, 439 F.2d 642 (D.C. Cir. 1971); Giglio v. U.S., 403 U.S. 150 (1972); People v. Hitch, 520 P.2d 974 (1974); People v. Hitch, 527 P.2d 361 (1974); State v. Gaddis, 18 CRL 47 (Tenn. Sup. Ct. 11/10/75); U.S. v. Augenblick, supra. For post Hitch cases, see State v. Teare, 335 A.2d 496 (1975); Western v. State, 528 P.2d 1179 (Alaska, 1974); State v. Teare, 342 A.2d 556 (1975); Poole v. Mississippi, 291 S.2d 723 (cert. den. 419 U.S. 1019 (1974)).

In reversing these orders of the municipal court and remanding the cases for trial, the Court feels compelled to urge that the government reassess and reevaluate its procedures in this area. It would appear from the testimony of Mr. John Richards, the government's chemist, that steps have already been taken in this direction. They should be

pursued with dispatch and vigor, for clearly the direction in which the law appears to be moving is in favor of the right of a defendant to independent testing of evidentiary matters which the government has tested. In simultaneous effort with the government, this court in the exercise of its supervisory jurisdiction over the municipal court, as well as for the benefit of proceedings before it, will, by guidelines or rules which it proposes to put in effect, lay down the parameters of what, for the future, will constitute "earnest efforts" on the part of the government to preserve evidence. The duty of preservation will be laid squarely on the shoulders of the government, and once defined, will be strictly enforced.

Finally, the Court cannot fail to recognize the efforts of defense counsel in these cases. He is to be commended for his diligent effort and for having paved the way for the action which will follow in this very vital area of concern—fairness in criminal trials.