STATE of Missouri, Appellant,

v.

Carl Theodore WYSSMAN, Respondent.

No. WD 36406.

Missouri Court of Appeals, Western District.

July 16, 1985.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied Aug. 27, 1985.

Application to Transfer Denied Oct. 16, 1985.

Albert A. Riederer, Pros. Atty., Kansas City by Robert Frager, Asst. Pros. Atty., for appellant.

G.M. Mouse, Independence, for respondent.

Before TURNAGE, C.J., and SHANGLER and MANFORD, JJ.

TURNAGE, Chief Judge.

The State, pursuant to § 547.200(1), RSMo Supp.1984, appeals from an order suppressing the results of a Breathalyzer test. Reversed and remanded.

Kurt Marquart, a State Highway Patrol Trooper, arrested Wyssman on January 8, 1984, after he observed Wyssman driving on the shoulder of I–70. The trooper stopped Wyssman and observed indications of intoxication. He gave Wyssman a field sobriety test and had Wyssman get in the patrol car so that he could take him to the Blue Springs Police Department.

Riding with Trooper Marquart was his brother, Kyle, pursuant to permission given by the trooper's superior officer.

After Wyssman had entered the patrol car, the trooper noticed another vehicle entering I–70 from an exit ramp. The trooper got out of his car to stop the other car, and was thus out of sight of Wyssman for about one minute. Kyle remained in the car and observed Wyssman while the trooper was gone.

After the trooper re-entered his car, he drove Wyssman to the Blue Springs Police Department. The trooper, who was certified to operate the machine, used the Alco-Analyzer Model 2000 to give Wyssman a breath test. The result of the breath test was a reading of .139.

Section 577.026, RSMo Supp.1984, states that the breath test shall be administered in accordance with the rules of the Department of Health. The Department of Health has adopted a regulation, 13 C.S.R. 50–140.060(10), which provides that in using the Alco-Analyzer Model 2000, the subject is to be observed "for at least fifteen (15) minutes—no smoking or oral intake of any material during this time; if vomiting occurs, start again with the fifteen (15) minute observation period."

Wyssman moved to suppress the results of the breath test because the test was not performed according to the prescribed procedures. He contended that because only 15 minutes and 39 seconds had elapsed from the time the trooper first observed Wyssman until he administered the test, subtracting the one minute the trooper was out of his car left an observation time of only 14 minutes and 39 seconds. Wyssman further contended that the observation by the trooper's brother could not be utilized to fill the gap in the trooper's observation. The trial court sustained Wyssman's motion to suppress the results of the breath test.

On this appeal, the parties agree as to the facts relating to the time involved and to the presence of the trooper's brother in the patrol car. At oral argument Wyssman's counsel agreed that the trooper's brother would testify that Wyssman did not smoke or take anything into his mouth or vomit while the trooper was away from the car for the one minute.

The question to be resolved is whether an officer must himself physically observe the person to whom the breath test is to be administered for the entire 15 minute period, or if someone else may participate in the observation to supply the required 15 minutes. No Missouri case has considered this question but the same situation was addressed in *Wester v. State*, 528 P.2d 1179 (Alaska 1974), *cert. denied*, 423 U.S. 836, 96 S.Ct. 60, 46 L.Ed.2d 54 (1975). In *Wester* the court considered a requirement essentially identical to the Missouri regulation. There, the tester was required to observe the subject for at least 15 minutes to insure that he did not regurgitate or place anything in his mouth during that time. In *Wester* the observation was made by the arresting officer and not by the officer conducting the test. The court held that although the testing officer did not personally observe Wester, he was under adequate observation by the arresting offi-

cer for a sufficient period of time. *Id.* at 1184–85[4]. The court further noted, "The mere assertion that ingestion was hypothetically possible ought not to vitiate the observation period foundational fact so as to render the breathalyzer test results inadmissible." *Id.* at 1185.

In this case there is no contention that Wyssman smoked or took anything into his mouth or vomited during the 15 minutes prior to the test. Rather, the contention is that the arresting officer, who performed the test, did not physically observe Wyssman for the entire 15 minutes. This court agrees with the holding in *Wester* and finds that there is sufficient evidence in the record to determine that Wyssman was observed for a period of 15 minutes, and that he did not do any of the things mentioned in the rule during this period which would be likely to produce a false reading on the breath machine. The parties agree that the trooper's brother would testify that nothing occurred while the trooper was out of the car, and except for that one minute, the evidence is sufficient to find that the trooper observed Wyssman for 15 minutes prior to the test. In *Wester* the court noted that courts should not indulge in the hypothetical exercise that a person may have done one of the acts mentioned in the rule which would affect the test results. In order to defeat the test on that ground, it is necessary that evidence be adduced that one of the acts contemplated by the rule occurred.

While *State v. Hanson,* 19 Or.App. 498, 528 P.2d 100 (1974), does not precisely involve the same question, the court held that there was sufficient compliance with an observation rule—similar to the one in this case—even though the officer had his back to the defendant for about one minute. Also, in *State v. Steele,* 52 Ohio St.2d 187, 370 N.E.2d 740 (1977), the court held that the 20 minute observation period was not broken during the time an officer left his vehicle and walked around it to let the defendant out on the other side. The court in *Steele* relied on *Wester* and found its reasoning to be highly persuasive. Obviously the court in these cases found the lapse in observation to be so short as to be insignificant. The thrust of these cases is that the officer's observation need not be shown to exist for every moment of the required time so long as the record is sufficient to give adequate assurance that the person observed did not do something covered by the rule which would skew the test result. Here the lapse in observation is covered by the observation of the trooper's brother which makes this a stronger case than *Hanson* and *Steele.*

The only reason advanced as to why the observation must be made by a person certified to operate the breath machine is that someone else will not know the things they are to observe. Certainly it does not require an expert to observe whether or not a person has smoked a cigarette or placed anything in his mouth or vomited. The only purpose of the rule is to assure that none of these things have occurred. When the record demonstrates that assurance then the purpose of the rule has been fulfilled. To require a literal 15 minute unbroken observation by a single officer who is certified to operate the machine is to place form over substance.

Here, the record demonstrates that Wyssman was observed during the 15 minutes prior to the test, and that nothing mentioned in the rule occurred to cause the result of the test to be flawed. The court erred in suppressing the test results. The order suppressing the results is reversed and this cause is remanded for further proceedings.

SHANGLER, J., concurs.

MANFORD, J., dissents in separate opinion.

MANFORD, Judge, dissenting.

I must respectfully dissent in said cause.

I fully appreciate the practical result sought by the majority opinion, but in my judgment, the majority opinion presents a result-oriented opinion. Such is not the prerogative of this court or any other court, although this writer is not so naive

to believe or ever think that such opinions do not issue from this court and others. The result has been the continual destruction of the body of law within our state which has reached such proportion that it remains questionable if Missouri has any reliable body of the law remaining.

The issue presented is whether or not the breath analyzer test was administered in accordance with the rules of the Missouri Department of Health, as required by § 577.026, RSMo Supp.1982. Specifically, Rule 13 C.S.R. 50–140.060 provides the following, and becomes the specific rule applicable to the instant case: "(10) In using the Alco-Analyzer Model 2000, observed subject for at least (15) minutes—no smoking or oral intake of any material during this time; if vomiting occurs, start again with the fifteen (15) minute observation period."

Concerning the facts herein, the parties dispute what effect, if any, the interruption (due to the absence of the trooper) had on the required fifteen-minute observation prescribed by the above rule. The state, of course, contends that the interruption did not invalidate the test result and of course, respondent contends just the opposite.

What this court must determine, of course, is the intent to be given the above rule. In determining this issue, the courts are guided by well-established rules of construction to establish the legislative intent and the effect to be given that intent. *Sermchief v. Gonzales,* 660 S.W.2d 683, 688 (Mo. banc 1983). Words within a statute are to be attributed their plain and ordinary meaning. The meaning accorded a statute is an issue of law and thus for the courts to determine and is not one of fact. *State v. Morrow,* 535 S.W.2d 539, 540 (Mo. App.1976). Research has failed to disclose a Missouri case which precisely holds that general rules of construction are applicable to rules and regulation, but such is the general rule where the question has been raised. See 73 C.J.S. *Public Administrative Law and Procedure* § 94 (1983) and 1 *A.C. Sands, Sutherland, Statutory Construction,* § 31.06. It should be held herein that the intent of rules and regulations shall be determined by the general rules of construction as applied and followed when reviewing and construing statutes. The purpose given for the rule applicable herein is disclosed as follows:

PURPOSE: This rule establishes step-by-step operating procedures for all of the approved breath analyzers in 13 CSR 50–140.050. Prosecuting attorneys have requested that these procedures be included as a rule so they can be introduced in court to show that *operators* of breath analyzers have adhered to the operating procedures set forth and approved by the Missouri Division of Health ... 13 CSR 50–140.060. (emphasis added)

It therefore must be concluded that the obvious intent of the above rule, 13 CSR 50–140.060(10), is to establish certain procedures which must be strictly adhered to in order that results of breath analyzer tests may be properly introduced in court proceedings. Section 577.026, RSMo Supp. 1982 provides that chemical tests to be considered valid shall be performed according to the methods and devices approved by the Missouri Division of Health.

It follows that to strictly adhere to the applicable regulations, a subject *must be observed continually for a period of not less than fifteen (15) minutes before a test is administered.* The obvious purpose is to make certain that the subject has not ingested any material, smoked, or vomited during the observation period. In the instant case, because of the particular facts and circumstances, respondent herein was not observed by the trooper (who was also the operator) for a period of approximately one minute. This lack of observation should not adversely reflect upon the trooper herein because, as the evidence reveals, he was in fact performing his duties by effecting another and separate arrest. The result, however, is there was not a continual minimum fifteen minute observation period prior to the administration of the breath analyzer test by the operator. As hind sight is always one hundred percent, it is easy to state that what the trooper should have done was to have observed

respondent from the time he returned to his patrol vehicle, while en route to the local police station, and while there, for a total interrupted period of time of not less than fifteen minutes. Again, this is not offered as criticism of the trooper, but rather as a guideline so that in the future it is clear that the rule requires a minimum and uninterrupted fifteen-minute observation time period by an operator.

The main thing overlooked by the majority opinion is that the rules and regulations applicable to breath analyzers are directed to persons qualified to operate them. It must follow that the same rules concerning observation of the person to be tested are limited to and directed to such operators and not other possible or potential witnesses.

The assertion by the state that normal blinking, turning of the head, and even sneezing would result in an interruption of the operator's observation, while perhaps are detractions from one's observation, are not of such magnitude as is the leaving of one unobserved and unaccompanied in a patrol vehicle. In addition, such natural physical and bodily functions should not be construed as sufficient to result in an interruption of observation within the meaning of the above rule. In my opinion, it should be held that the same rule requires the minimum continual fifteen-minute observation be conducted and completed *by persons qualified to operate the breath analyzer and perform the applicable test.* It would, under the above rule, make no sense for an untrained individual to make the observation because such untrained individual lacks the knowledge and understanding of what he or she is to look for (i.e., ingestion of materials, smoking and/or vomiting) within the meaning and purpose of the rule and for purposes of administering the test.

The trial court did not err in suppressing the results of the breath analyzer test under the particular facts and circumstances herein, because the evidence clearly establishes that the respondent was not continually and without interruption observed by the trooper for a minimum of fifteen minutes as required by 13 CSR 50–140–060(10).

I would affirm the judgment.