Francis J. Donovan, J.
Defendant was charged with a violation of section 1192 (subd. 1) of the Vehicle and Traffic Law. At the close of the People’s case, defendant moved to dismiss.
The statute provides that there can be no conviction unless “it is shown by means of a chemical test administered under section eleven hundred ninety-four that there was * * * five-hundredths of one per centum or more by weight of alcohol in his blood ’ ’.
Two tests were conducted with a machine called a ‘ ‘ breathalyzer ’ ’. A police technician, specially trained for the operation of the machine described the manner in which the tests were conducted. He gave no detailed description of all of the component parts of the machine, but he did describe the manner in which defendant’s breath sample was conducted into an ampule containing a chemical solution, which was placed in the machine. He testified to having tested the machine by passing room air through it and obtaining a .00 reading. He then passed vapor from a predetermined .10 alcohol solution through the machine and obtained a reading of .09. Adjusting for the temperature, the calibrated reading on a standard scale printed on a police form should have been .093. He then flushed the machine with air. He then ran a sample of defendant’s breath through the machine and obtained a reading of .14. He again flushed the machine and thereafter took a second sample of defendant’s breath and obtained a reading of .14.
Defendant’s principal contentions are: (a) The test of breath was not a chemical test, (b) The proof of the accuracy of the breath test is insufficient.
The breath was conducted into a chemical solution. The effect or result of that reaction was measured by some electrical means. In a given experiment, the measurement of a chemical result may be by thermometer, mechanical means, sensory observation, such as visual, or taste, or any of a variety of means. The test remains a chemical test, no matter how the result is measured or demonstrated.
In its use of color change by chemical reaction to make a determination, the breathalyzer is analogous to a vitascope which is a machine used to test seeds. The vitascope was held to be an instrument for chemical analysis in Burrows Equipment Co. v. United States (300 F. Supp. 455, cited in Words and Phrases, “ Chemical analysis ”).
Since the readings of .14 are the results of a statutory test, they are admissible. Section 1192 of the Vehicle and Traffic Law expressly so provides. Of course there must be adequate *126 proof that the test was so conducted and the apparatus of such a nature and in such operating condition that it produced a reasonably accurate result. The test by room air and by the use of the .10 alcohol solution and the taking of two samples, each resulting in the same reading, are some evidence supporting the accuracy of the reading. The experience of the technician and the routine which he followed further substantiate its accuracy. There may have been error because of some deficiency or defect in some component part, or in the quantity, or the quality of the chemical, or the conduct or condition of the person tested.
No expert was introduced to testify as to the “operating principle ’ ’ of the breathalyzer. The breathalyzer and the principles in its use are described in detail in Defense of Drunk Driving'Cases (2d ed.) by Richard Erwin. Erwin describes the breathalyzer as a machine designed for quantitative breath alcohol determination which utilizes potassium dichromate in sulphuric acid solution as the re-agent for oxidizing determined alveolar.
Taking judicial notice of its own records, in a large number of cases, the District Court of Nassau County is aware that the breathalyzer is the instrument in current use for testing alcohol in the blood by the Nassau County Police Department.
In case after case the prosecution has submitted a qualified chemist, who is in charge of the police laboratory, who has time and again explained in detail the nature of the machine, the scientific principles upon which it is predicated and the reasonable accuracy of the machine.
In the present case the police technician who administered the breathalyzer test, testified that he had administered 150 such tests. He further testified that each test was administered to a subject who had been placed under arrest after the arresting officer had formed an opinion that the subject was intoxicated and that prior to administering the breath test, the technician was required to conduct certain performance tests to determine by observation the condition of the subject, and to enter that opinion upon Police Department Form 38. He stated that he found a correlation between the opinion based upon observation prior to the test and the test result. In all cases but one, the subject’s breath produced a reading of .10 or higher. The single ease produced a lower reading of .09, and that based upon this experience, he expected a reading of .15 or higher in each case where he noted on the form 38 that the effect of alcohol was obvious and that where he noted the effect was slight, he expected a reading of less than .15.
*127 It is interesting to note that in the form 38 in the instant case, which was in evidence, he had marked “ obvious to slight ”. The actual reading of .14 substantiates the opinion based upon observation, to a remarkable degree.
In the light of the heavy volume of such cases in this court, it becomes important to determine whether expert testimony should be required in every case to establish the general reliability of the breathalyzer as a device for making a chemical analysis of alcohol in the blood.
It is the opinion of this court that the breathalyzer now falls in the same category as the radar speedometer (People v. Magri, 3 NY 2d 562). Proof by expert testimony should not be required to establish the general reliability of the machine.
There remains a question as to whether or not the testing of the machine and its various components was adequate. It is the opinion of the court that the testing was not adequate to prove reasonable accuracy beyond a reasonable doubt. If the case ended there, defendant’s motion would be granted. However, there were the independent opinions of the arresting officer and the technician who applied the test based upon their observation which established beyond a reasonable doubt that the defendant’s ability to operate a motor vehicle was impaired by reason of the consumption of an alcoholic beverage. In this light there appears to be no reason why the results of the breathalyzer may not be treated in the same way as the result of an untested speedometer or an untested radar device. In such cases the independent opinions of police officers have been given effect as corroborative testimony to establish the fact that the defendant’s ability to operate the vehicle was impaired (cf. People v. Magri, supra; People v. Dusing, 5 N Y 2d 126). The motion to dismiss the information is denied.