THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* GEORGE A. DONALDSON, Appellant.

Fourth Department, February 18, 1971.

*Richard C. Mitchell, Jr.,* for appellant.

*Eugene F. Sullivan, Jr., District Attorney (John Michael Mowry* of counsel), for respondent.

GABRIELLI, J. In reviewing a judgment of the County Court, Oswego County, rendered July 9, 1970 upon a jury verdict convicting defendant of operating a motor vehicle while in an intoxicated condition, as a felony, we are called upon to determine the admissibility of the results of a blood-alcohol test as measured by an apparatus known as a " Breathalyzer ".

Traveling south on Route 57 in the Town of Schroeppel on the evening of February 8, 1970, defendant operated his car partially in the northbound lane, forcing an oncoming vehicle being operated by Trooper Frederick Klein, to pull off the highway. Klein turned his troop car around, followed defendant for approximately one-half mile and observed that defendant crossed into the northbound lane on several occasions and upon returning to his southbound lane, he would drive to the extreme right hand side thereof and onto the shoulder. The defendant stopped after being signaled by the trooper who testified that in talking to defendant he noticed that his speech was slurred, his eyes were bloodshot and watery, that there was an odor of alcohol on his breath and that in his opinion defendant was intoxicated. He was placed under arrest and taken to the State Police barracks at Fulton where he was asked to take a sobriety test, to which defendant consented and, within 30 minutes of his arrest, he was given a Breathalyzer test by Trooper Richard Dempsey. The latter also testified that prior to administering the test, he noticed that defendant's speech was slurred, his eyes were bloodshot, his breath smelled of alcohol and in his opinion defendant appeared to be intoxicated. Trooper Dempsey also testified that the reading on the machine showed " 25/100's of one percent of blood alcohol content ". On the other hand, defendant testified that at the time of his arrest he was fatigued from a lack of sleep and that he had consumed but three or four bottles of beer on that day. A barmaid-waitress at his last stop before the arrest, testified that in her opinion he was not intoxicated.

Defendant's main thrust on this appeal is his claim that the results of the test were improperly received, asserting that there was no showing that the Breathalyzer is scientifically reliable and that there was no proof that the test was properly conducted by a qualified operator in accordance with required rules and regulations.

In order to resolve these questions, we first take note of those portions of the Vehicle and Traffic Law which were in effect at the time involved herein. In pertinent part, subdivision 2 of section 1192 provided that: " 2. * * * Whoever operates a motor vehicle * * * while in an intoxicated condition after

having been convicted of operating a motor vehicle * * * while in an intoxicated condition * * * shall be guilty of a felony ''.

Subdivision 3 of section 1192 provided that: '' 3. Upon the trial of any action or proceeding arising out of acts alleged to have been committed by any person arrested for operating a motor vehicle * * * while in an intoxicated condition * * * the court may admit evidence of the amount of alcohol in the defendant's blood taken within two hours of the time of the arrest, as shown by a medical or chemical analysis of his breath * * * For the purpose of this section * * * (d) evidence that there was, at the time, fifteen-hundredths of one per centum, or more, by weight of alcohol in his blood, may be admitted as prima facie evidence that the defendant was in an intoxicated condition.''

And section 1194 thereof, insofar as here applicable, provided that: '' 1. Any person who operates a motor vehicle or motorcycle in this state shall be deemed to have given his consent to a chemical test of his breath * * * for the purpose of determining the alcoholic * * * content of his blood provided that such test is administered at the direction of a police officer: (1) having reasonable grounds to believe such person to have been driving in an intoxicated condition ''.

It is readily apparent that defendant's manner of operating his car as well as his appearance and condition, afforded the officer '' reasonable grounds to believe such person to have been driving in an intoxicated condition ''. In these circumstances there was justification for the request that defendant submit to a chemical test.

In approaching the question of the admissibility of the results of the chemical test we examine the history and experience of its use as well as its methodology and manner of operation. The Breathalyzer has been in public use since 1954 and has been widely accepted and adopted by law enforcement agencies for use in testing blood-alcohol content. It operates on the firmly established principle that at normal body temperature the concentration of alcohol in the blood circulating through the lungs is 2,100 times greater than in the air discharged from the lungs (4 Gray, Attorneys' Textbook of Medicine, § 133.73[1]). The apparatus is a semi-automatic analyzer designed to test a blood-alcohol percentage present in any breath sample. Scientifically, the Breathalyzer wastes all but the last portion of a long exhalation, trapping a measured volume which is then forced through a reagent and is ultimately photometrically measured resulting in a calculated reading of the subject's blood-alcohol

percentage. Studies have shown that this device is considered to be "fail safe" and that as a general rule its readings are slightly lower than those obtained in a corresponding blood test; and any slight error caused either by mechanical defect or operator fault will usually produce lower rather than higher readings (45 N. C. L. Rev. 34, 56).

Addressing ourselves to defendant's first assignment of error in this regard, we take note of an absence of any appellate determinations dealing with the scientific reliability of apparatus used to analyze one's breath in order to determine the percentage of alcohol in the blood. In noting its long usage and wide acceptance as an instrument for making a chemical analysis of alcohol in the blood, we are led to agree with the rationale in *People* v. *Morris* (63 Misc 2d 124, 126–127) that it is no longer necessary to require expert testimony to establish the general reliability of the machine. We liken the question presented to that raised in *People* v. *Magri* (3 N Y 2d 562) as it related to the use of radar in speed detection. There, in determining that it was no longer necessary to require expert testimony in each case as to the nature, function or scientific principles underlying the radar speedmeter, the court observed (p. 566) that "Almost daily, reproductions by photography (once questioned, see *Cowley* v. *People,* 83 N. Y. 464 [1881]), X rays, electroencephalograms, electrocardiograms, speedometer readings, time by watches and clocks, identity by fingerprinting, and ballistic evidence, among a variety of kindred scientific methods, are freely accepted in our courts for their general reliability, without the necessity of offering expert testimony as to the scientific principles underlying them." Hence, we think the time has come when we may recognize the general reliability of the Breathalyzer as a device for measuring the concentration of alcohol in the blood, and that it is not necessary to require expert testimony as to the nature, function or scientific principles underlying it (Watts, Some Observations on Police-Administered Tests for Intoxication, 45 N. C. L. Rev. 34, 56 [1966]; Dubowski, Measurement of Ethyl Alcohol in Breath, pp. 326–333; *Pruitt* v. *State,* 216 Tenn. 686; *People* v. *Garnier,* 20 Ill. App. 2d 492). Moreover, by providing that the results of the chemical analysis of breath tests are admissible into evidence (Vehicle and Traffic Law, § 1192, subd. 3, now § 1195), the Legislature has obviously determined that breath tests, if conducted in accordance with proper procedures, are scientifically reliable for determining the percentage of alcohol in the blood.

The evidence as to the operation of the Breathalyzer was adequate. The officer who administered the test was qualified

in that respect by his training received at the State Police School given by personnel of the New York State Police Laboratory. He had administered the test on many occasions and further testified in detail regarding the required procedures to be performed, all of which were accomplished in the manner required by the standard instruction manual and the operational check list. Qualifications similar to those of the trooper administering the test have been found to be satisfactory (*Commonwealth* v. *Shea*, 252 N. E. 2d 336 [Mass.]; *People* v. *Krueger*, 99 Ill. App. 2d 431; *Alexander* v. *State*, 305 P. 2d 572 [Okla.]; *State* v. *Damoorgian*, 53 N. J. Super. 108). Additionally, there was ample proof that the instrument was properly calibrated and that the chemicals used in the test were of the proper kind, and mixed in the proper proportion. There also was adequate proof that the entire test had been administered in accordance with the rules and regulations of the State Police Department. Accordingly, it was not error to have admitted in evidence the results of the breath test.

We further find no error in the court's refusal to charge that the jury could find appellant guilty of the lesser offense of "driving while impaired". Subdivision 1 of section 1192 of the Vehicle and Traffic Law, in effect at the time of this occurrence, provided that: "1. Whoever operates a motor vehicle * * * while his ability to operate such motor vehicle * * * is impaired by the consumption of alcohol shall be guilty of a traffic infraction. No conviction shall be had under this subdivision after entry of a plea of not guilty unless it is shown by means of a chemical test administered under section eleven hundred ninety-four that there was, within two hours of the defendant's arrest, ten-hundredths of one per centum or more by weight of alcohol in his blood". A conviction under this section must be based upon the results of a chemical test and, in order for the jury to convict they would be required to accept the results of the Breathalyzer test which showed appellant's blood-alcohol content to be 0.25%, a result far above the statutory requirement of 0.15% as prima facie evidence of intoxication (Vehicle and Traffic Law, § 1192, subd. 3). "The classic test to warrant a refusal to submit lower degrees or included crimes is that ' every possible hypothesis ' but the higher crime be excluded" (*People* v. *Malave*, 21 N Y 2d 26, 29; see, also, *People* v. *Mussenden*, 308 N. Y. 558). In the circumstances of this case, the court correctly charged the jury. In reaching this conclusion we have taken note of the provisions of section 1196 of the Vehicle and Traffic Law, as amended by

chapter 275 of the Laws of 1970, but which did not become effective until January 1, 1971.

Appellant's other assignment of error regarding the court's definition of intoxication was not preserved for review by either objection or exception (Code Crim. Pro., § 420-a; *People* v. *Reynolds,* 25 N Y 2d 489). While it may be proper to overlook this failure (*People* v. *Palmer,* 26 A D 2d 892), we are not impelled to do so where the verdict is more than amply supported by the record (e. g., *People* v. *Weis,* 32 A D 2d 856, cert. den. 397 U. S. 1047).

The judgment should be affirmed.

MARSH, J. P., MOULE and HENRY, JJ., concur.

Judgment unanimously affirmed.