OPINION OF THE COURT
John J. Ark, J.
On November 18, 1982, the defendant, David C. Shepherd, was arrested by a New York State trooper and charged with operating a motor vehicle while intoxicated in violation of section 1192 of the New York Vehicle and Traffic Law, and other related traffic charges. Mr. Shepherd allegedly committed this crime on Interstate 590 in the Town of Brighton. Subsequent to his arrest, Mr. Shepherd was driven to the Henrietta, New York, State Police (hereinafter NYSP) substation where a sample of his breath was tested in a Smith and Wesson Model 900 Breathalyzer. The NYSP then prepared one or more reports alleging that Mr. Shepherd’s blood alcohol content had been measured at .18% by weight.
On January 13, 1983, the defendant demanded, inter alia, that the State provide him with a sample of his breath taken at the time of his arrest. The State replied that no attempt has been made to save the breath sample tested and no separate breath sample was saved or preserved for *366 later analysis. The defense then moved for an order suppressing the evidence of the breathalyzer test result on the ground that the failure of the NYSP to preserve a sample of the defendant’s breath constituted a violation of the defendant’s right to due process.
On March 10, 1983, a hearing was held at which the defendant presented an expert witness, Dr. D. R. Wilkinson, professor, department of chemistry, Delaware State College, Dover, Delaware, and coauthor of The Trapping, Storing, and Subsequent Analysis of Ethanol in In-Vitro Samples Previously Analyzed by a Nondestructive Technique (26 Journal of Forensic Sciences, No. 4, Oct., 1981, p 671). At the hearing, Dr. Wilkinson essentially reiterated his findings in the above-referred to article and was cross-examined by the prosecution. In large measure, Dr. Wilkinson’s research established the reliability of the original breath tests done by the police through the testing of the second sample by chemists.
After the hearing, this court is convinced that during an arrest for driving while intoxicated, where a breath test has been administered it is both practical and cost effective for the police to save a sample of a defendant’s breath (or its alcohol content) for future scientifically reliable independent analysis. However, the question then becomes, do the People have a constitutional duty to save a sample of the defendant’s breath alcohol?
The United States Supreme Court decision in Brady v Maryland (373 US 83) is the leading case outlining the prosecution’s duty to preserve and disclose to defense counsel all material which, if presented at trial, would assist in the search for truth. In part, Brady holds (p 87): “[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.”
Judge Skelly Wright articulated a principle implicit in Brady with his decision in United States v Bryant (439 F2d 642). The Bryant case concerned a defense demand for disclosure of a tape recording made by Government agents of motel room conversations between the defendants and an undercover agent allegedly concerning a sale of narcot *367 ics. The prosecution claimed it lost the tape. Although neither the court nor the defense counsel knew whether or not the tape contained exculpatory evidence, the court did know that the missing tape was “absolutely crucial to the question of [defendant’s] guilt or innocence.” (439 F2d, at p 648.) The court decided at page 651 that: “[T]he duty of disclosure attaches in some form once the Government has first gathered and taken possession of evidence * * * Otherwise, disclosure might be avoided by destroying vital evidence before prosecution begins or before defendants hear of its existence. Hence we hold that before a request for discovery has been made, the duty of disclosure is operative as a duty of preservation. Only if evidence is carefully preserved during the early stages of investigation will disclosure be possible later.”
The Bryant decision is often applied in New York. (See, e.g., People v Saddy, 84 AD2d 175, 178; People v Watkins, 67 AD2d 741, 742; People v Perez, 50 AD2d 908.) Furthermore, this duty holds regardless of whether the material is clearly exculpatory or simply may have been. (United States v Bryant, supra.) The alcohol content of the defendant’s breath at the time of his arrest is central to the question of the defendant’s innocence or guilt and frequently is, as is the case here, the single most important part of the People’s case.
The results of the independent test might tend to prove the defendant’s innocence, or to induce a reasonable doubt as to his guilt. Even though, as indicated by Dr. Wilkinson, the second test has a high probability of confirming the breathalyzer results, the failure of the police to preserve such a sample and provide it to the defendant on demand violates the defendant’s right to due process of law guaranteed under the Fourth and Fourteenth Amendments to the United States Constitution and section 6 of article I of the New York State Constitution.
In addition to the constitutional requirement of disclosure discussed above, the People also have a statutory duty to disclose as set forth in GPL 240.20, which reads in relevant part as follows:
“1. Except to the extent protected by court order, upon a demand to produce by a defendant against whom an indict *368 ment, superior court information, prosecutor’s information or information is pending, the prosecutor shall disclose to the defendant and make available for inspection, photographing, copying or testing, the following property * * *
“(e) Any other property obtained from the defendant * * *
“(g) Anything required to be disclosed, prior to trial, to the defendant by the prosecutor, pursuant to the constitution of this state or of the United States.”
The People admit in the instant case that no attempt was made to save a sample of the defendant’s breath or its alcohol content, as is in accordance with normal police procedures for a breathalyzer test.
“Although there is an exception for good faith loss of evidence, there is no exception for good faith administrative decision that certain evidence is not discoverable and thus need not be preserved. The Supreme Court made that much clear in Brady v. Maryland, supra Note 6, 373 U.S. at 87, 83 S.Ct. 1194, 10 L.Ed. 2d 215. Hence, in framing their rules for evidence preservation, investigative agencies must define discoverable evidence very broadly, including any materials that ‘might’ be ‘favorable’ to the accused.” (United States v Bryant, 439 F2d, at p 652, n 21.)
Although there is no New York decision on the issue of a breath alcohol sample preservation requirement (hereinafter referred to as the trapping requirement), several other States have, however, already determined the issue. (See Municipality of Anchorage v Serrano, 649 P2d 256 [Alaska]; Baca v Smith, 124 Ariz 353; Garcia v District Ct., 197 Col 38; State v Cornelius, 122 NH 925 [recognizing a defendant’s due process right to a breath alcohol sample for independent analysis]; Vt Stats Ann, tit 23, § 1203, subd [a]; Okla Stats Ann, tit 47, § 752, subd 5 [implementing the breath trapping requirement by statute]; e.g., Montoya v Metropolitan Ct., 21 NM St Bar Bull 1120 [rejecting the trapping requirement on a finding that the record did not adequately establish the scientific reliability of testing the trapped sample].)
In New York, the related but distinguishable issue of preserving the test ampoule utilized in a breathalyzer test has turned on whether the preservation of the test ampoule *369 will permit future, reliable scientific analysis. (See People v Richter, 102 Misc 2d 285; People v Le Pree, 105 Misc 2d 1066; People v Santiago, 116 Misc 2d 340.)
As discussed above, this court now holds that it is both practical and cost effective for the police to save a sample of a defendant’s breath for future scientifically reliable independent analysis and are hereby required to do so.
The question then becomes what are the sanctions to be imposed upon the prosecution for its failure to provide the “trapped” breath sample? The California Supreme Court addressed this question in the related issue of nonpreservation of a breath test ampoule in People v Hitch (12 Cal 3d 641, 652-653): “We think that the rule declared by the federal court in Bryant provides a solution for the problem now before us involving the chemical test of a driver’s breath (Veh. Code, §13353). As we have explained, the test ampoule, its contents and the reference ampoule customarily used in the test constitute material evidence on the issue of the driver’s guilt or innocence of the charge of driving a vehicle under the influence of intoxicating liquor. We conclude that the investigative agency involved in the test has a duty to preserve and disclose such evidence. Accordingly we hold that, where, as here, such evidence cannot be disclosed because of its intentional but nonmalicious destruction by the investigative officials, sanctions shall in the future be imposed for such nonpreservation and nondisclosure unless the prosecution can show that the governmental agencies involved have established, enforced and attempted in good faith to adhere to rigorous and systematic procedures designed to preserve the test ampoule and its contents and the reference ampoule used in such chemical test. The prosecution shall bear the burden of demonstrating that such duty to preserve the ampoules and their contents has been fulfilled. If the prosecution meets its burden and makes the required showing, then the results of the breathalyzer test shall be admissible in evidence, even though the ampoules and their contents have been lost. If the prosecution fails to meet its burden then the court shall apply sanctions for nondisclosure. Finally we hold that in such latter event due process shall not require a dismissal of the action but *370 shall require merely that the results of the breathalyzer test be excluded from evidence.” Accordingly, the results of the breathalyzer test in the instant case are hereby suppressed.
The remaining question is the application of law and logic to other similar instances. In Stovall v Denno (388 US 293, 297) the United States Supreme Court addressed the issue of retroactivity or nonretroactivity of a new judicial rule involving a constitutional dictate. “The criteria guiding resolution of the question [of retroactivity] implicate (a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards”.
Even though the import of sanctions on the prosecution for nonmalicious destruction of evidence potentially favorable to the defendant is to afford the defendant a fair trial, the court must consider that law enforcement in this community has in good faith not preserved breath samples and has relied on this procedure of nonpreservation. Particularly in light of the large number of driving while intoxicated arrests in this community, and the testimony of Dr. Wilkinson that in the overwhelming number of samples the second breath test confirmed the accuracy of the original breath test, any retroactive application of rule announced herein would have a destructive and unwarranted effect on the criminal justice system. Furthermore, this court desires that the various police agencies servicing this community research and acquire the most reliable and cost effective breath trapping system available. Therefore, this court holds that only prospective effect shall be given to this decision and that the rule announced herein shall be applied only to chemical tests of breath administered 90 days after the date of filing this opinion.
Since driving while intoxicated is one of the few crimes which is committed, in most instances, in the presence of the police, the police should be encouraged to preserve as much evidence relating to the intoxication as possible. In People v Strozier (116 Misc 2d 103), this court held that video tapes of the defendant at the time of his arrest were admissible into evidence as long as certain procedural *371 safeguards are followed. The video taping of the defendant mechanically reproduces for the trier of fact the actual demeanor and actions of the defendant at the time of arrest.
The preserved sample of the defendant’s breath to be tested at a time subsequent to the arrest, at the request of and through the efforts of the defendant, should either convincingly establish the reliability of the original breathalyzer test or raise a reasonable doubt.
Eventually technology might advance to the state where the trier of fact can observe a video tape of the defendant’s demeanor, his being tested by the breathalyzer and his giving a second breath sample which would then be brought into the courtroom, at trial, for testing. Should this scenario become feasible, the ultimate object of a trial — the search for truth, will be enhanced.