OPINION OF THE COURT
Raymond E. Cornelius, J.
The defendant has made a motion, pursuant to CPL 330.30 (subd 1), to set aside a jury verdict convicting him of violations of subdivisions 2 and 3 of section 1192 of the Vehicle and Traffic Law, as felonies. This motion is primarily addressed to the court’s decision, during trial, to admit the results of a breath test, administered on a CMI intoxilyzer model 4011AS, and which showed the presence of .20 of one per centum of alcohol in the defendant’s blood within two hours of his arrest. More particularly, the defendant contends that the People failed to establish a sufficient foundation that the instrument was in proper working condition, and, therefore, the admission of the results, into evidence, was either error or the jury’s verdict was against the weight of the evidence.
*1052 The defendant was arrested during the early morning hours of February 27, 1983, by the Monroe County Sheriff’s office, and, as aforesaid, was administered a breath test by means of a CMI intoxilyzer, model 401 IAS. The testimony, produced at the trial, disclosed this law enforcement agency had received several intoxilyzers from the New York State Division of Criminal Justice Services during the latter part of 1979. Although they were used for a period of time thereafter, for the purposes of administering breath tests to persons arrested for driving while intoxicated, their use was discontinued in June, 1982, pursuant to a request of the District Attorney’s office. Subsequently, these intoxilyzers were reactivated in February, 1983, but, again, discontinued in March, 1983, for policy reasons. Thus, the defendant was arrested and administered a breath test during the relatively short period of time that the intoxilyzers were utilized by this particular police agency.
In cases involving the breathalyzer, it is no longer required that the People introduce evidence establishing the scientific reliability of the instrument as a foundation for the admissibility of the results of any test. (See People v Donaldson, 36 AD2d 37.) There is no appellate authority, however, whereby judicial recognition of reliability has been accorded to other breath-testing devices. Accordingly, the People, in this case, called, as an expert witness, the chief toxicologist for the State of Ohio Department of Health, who is in charge of the alcohol testing program, and also serves as a forensic consultant. This witness testified, at length, concerning the operation of the intoxilyzer 4011 series, and rendered an opinion that the result of a test performed on such an instrument, if in proper working order, would be reliable to a scientific certainty. In addition, the technical training supervisor for the New York State Division of Criminal Justice Services testified concerning the use, maintenance and calibration of intoxilyzers.
Á permit was introduced into evidence, issued by the New York State Department of Health, certifying that the deputy sheriff, who administered the intoxilyzer test in this case, was qualified and competent to conduct and *1053 supervise chemical analyses of a person’s breath. Accordingly, the record contains presumptive evidence that the examination was properly given. (See Vehicle and Traffic Law, § 1194, subd 9.) Furthermore, this officer testified that immediately following the test, administered to the defendant, the instrument was placed through a purge cycle, and thereafter, a test, involving a simulator solution, was performed. In essence, this latter test involved checking the accuracy of the instrument against a standard alcohol solution of a known value, and resulted in an acceptable, tolerance deviation of .01%. The People also introduced into evidence a record of weekly tests performed upon the intoxilyzer, which the court found to be properly certified as a business record. (See CPLR 4518, subds [a], [c].) This record disclosed that the instrument was tested on February 14 and February 21, 1983, by the use of a standard solution, which contained a known alcoholic content, and the results were consistent.
The court sustained an objection to the introduction of another record, entitled “Certification of Calibration” because the certification accompanying the record failed to properly qualify it as a business record. The record in question related to a calibration performed on February 28, 1983, by the Division of Criminal Justice Services, Bureau for Municipal Police, and was addressed “To Whom it May Concern”. The accompanying certification recited that the record “was made in the regular course of business of the New York State Bureau for Municipal Police at the time such calibration was performed, and further that it was the regular course of the Bureau for Municipal Police’s business to report the result of said instruments calibration to the police agency that requested it’ (emphasis added). There was nothing contained in this certification to indicate that it was the regular course of the business, of the Bureau for Municipal Police, “to make” the record, as distinguished from the regular course of business to report the result of a specific instrument’s calibration to the law enforcement agency, which has requested it. (CPLR 4518, subd [a]; People v Gower, 42 NY2d 117; cf. People v Farrell, 58 NY2d 637.) Otherwise stated, in this court’s opinion, the certification only satisfied half the test because it failed to *1054 assert that the participants, who produced the record, were acting within the course of regular business conduct of the Bureau for Municipal Police. (See Matter of Leon RR, 48 NY2d 117.) In addition, this court declined to rule that the proposed evidence came within some public document exception to the hearsay rule. (Contra People v Boats, 102 Misc 2d 1004.)
The defendant contends that the failure of the People to succeed in having this “Certification of Calibration” admitted into evidence resulted in the proof being insufficient that the instrument was in proper working condition on February 27, 1983, and, consequently, the lack of a foundation for the admissibility of the test results. In People v Donaldson (36 AD2d 37, 41, supra), the court, after ruling that expert testimony would no longer be necessary to establish reliability of the breathalyzer, observed that several facts were established in connection with the reliability of the particular test, in question, including “ample proof that the instrument was properly calibrated”. Subsequently, some courts interpreted these remarks to constitute rigid requirements of proof before a test result of a breath-testing instrument be admitted into evidence. In People v Smith (81 Misc 2d 61), the court reversed the conviction for driving while intoxicated and directed a new trial, and, in so doing, noted that “[evidence that the machine [a breathalyzer] was operating properly by calibration records a reasonable time before and after the particular time of the test result in question should be introduced and were lacking in the case at hand” (p 66). As does the defendant in the case pending before this court, the decision cited People v Donaldson (supra), and People v Meikrantz (77 Misc 2d 892) as authority. Primarily in reliance upon Donaldson, the court, in Meikrantz (supra), lists six factors which are necessary before a sufficient foundation is established for the admissibility of a breathalyzer test result, including proof “that the testing device was in proper working order” (p 898). The court defined the term “calibration” (p 899) as an adjustment of the breathalyzer machine, as contrasted with a test of the machine, and, in that case, held that certain certificates of calibration were too remote in time and should have been *1055 suppressed. Literature in this field, as well as other cases, does not necessarily use the term “calibration” in the same restrictive sense. For example, in the case pending before this court, the “Certification of Calibration”, which the People unsuccessfully attempted to introduce into evidence, certifies that the intoxilyzer had been “calibrated” and was “accurate and reliable”, based upon tests performed with a reference solution of a known or standard alcohol percentage. This, of course, is the same kind of test as performed by the local law enforcement agency on a weekly basis, as well as the test performed following administration of the test to the defendant.
The important question should be whether or not the testing device was properly functioning at the time of the test. Although this may involve proof of a physical inspection and/or adjustment by an outside agency, this court is of the opinion that the fact that the instrument is in proper working order, and, therefore, accurate, may also be inferred from the kind of test performed by the Monroe County Sheriff’s office in this case, utilizing a solution containing a known alcohol value. In fact, even in Meikrantz (77 Misc 2d 892, 899, supra) the court stated that “[a] determination regarding the proper functioning of a breathalyzer must be made on a case-by-case basis” and, further, that “[e]ach case must be looked at anew and each [case] must stand or fall on its own facts” (p 899). More recently, the Court of Appeals has given a clear indication that the prerequisites for establishing the foundation for introduction of the results of a breathalyzer test should perhaps be relaxed. (See People v Gower, 42 NY2d 117, supra.)
Although the court has determined that the evidence in the pending case was legally sufficient to justify the jury’s verdict, based upon the instructions in regard to reliability of the intoxilyzer, there is a second reason why the court believes that the evidence regarding reliability of the intoxilyzer, and in particular, that it was working properly at the time of the test, was legally sufficient. This involves the nature of the instrument itself which is a model 4011AS. This instrument utilizes infrared energy, and is based upon the Beer-Lambert law of absorption. In this *1056 regard, the instrument operates on the same principle as the Intoximeter 3000, which is described in detail in People v Jones (118 Misc 2d 687). Simply stated, ethyl alcohol absorbs infrared energy at a wavelength of about 3.39 microns, and the intoxilyzer contains an absorption band, from an infrared energy light source, within this range. Other substances, specifically including acetone, may absorb infrared energy at the same wavelength, and, therefore, unlike the earlier models of the intoxilyzer, as well as the Intoximeter 3000, model 401 IAS contains a second absorption band, at 4.48 microns, at which alcohol, but not these other substances, will absorb the infrared energy. Thus, the presence of ethyl alcohol, contained in the breath sample, can be detected, and, furthermore, the alcohol vapor, contained in the sample cell, will absorb the infrared energy in proportion to its concentration. As the concentration of alcohol increases, the amount of infrared energy reaching the detector will proportionately decrease. The result is converted to a blood-alcohol content reading, which is displayed and also printed on a card, which has previously been inserted into the instrument.
The expert witness, who testified at the trial concerning the scientific reliability of the instrument, testified that the instrument contains internal, “fail-safe” mechanisms which assure the proper operation at the time of a test. Thus, if the electronic components are not working properly, for example, an error light would appear and the instrument would not print a ticket. The same would be true if the operator did not follow the proper procedure, the proper temperature was not attained, or any other problem connected with the operation of the instrument, itself.
During cross-examination, the witness stated that the above-described aspects of the instrument, which would be indicative of a malfunction, also have fail-safe mechanisms to assure that they are functioning in a proper manner. Nevertheless, he did acknowledge that he was not claiming that the instrument was infallible, but only that the instrument contained a fail-safe mechanism to detect a problem and prevent a result being printed. Indeed, on a more general level, the intoxilyzer may be subject to some of the same concerns which have been prevalent in regard to the *1057 breathalyzer. For instance, breath-testing devices, using infrared absorption, like the breathalyzer, are based upon Henry’s Law which involves the premise that the percentage of alcohol in the blood is 2,100 times the alcohol in the alveolar air of every subject. Recently, questions have been raised about the effect of radio frequency interference, in regard to breath-testing devices. (See People v Tilley, 120 Misc 2d 1040; People v Hochheimer, 119 Misc 2d 344.)
As long as society attempts to deal with the consequences caused by citizens who drive motor vehicles, after the consumption of alcoholic beverages, in terms of degree of intoxication or impairment, as distinguished from an outright prohibition, questions relating to the reliability of breath-testing devices will continue to present legal and evidentiary problems. Nevertheless, this court has concluded that the intoxilyzer model 4011AS is a more reliable instrument than the breathalyzer, which has been judicially recognized as scientifically reliable. (People v Donaldson, 36 AD2d 37, supra.) Furthermore, use of this intoxilyzer does not involve some of the problems commonly associated with the wet-chemistry operation of the breathalyzer, such as the qualitative and quantitative content of the chemicals. Also, this court is convinced that the results are less susceptible to operator error. In regard to the particular issue, raised by the motion to set aside the verdict in this case, the court concludes that the internal, “fail-safe” mechanism is sufficient to establish that the instrument is in proper working order, as a prerequisite for admission of the test results. Therefore, the nonreceipt of the “Certification of Calibration” into evidence, did not render the test results inadmissible. In addition, based on the instructions provided to the court, the jury possessed sufficient evidence, based upon the expert witness’ testimony, that the instrument was in proper working order.
The court has reviewed the other arguments contained in the defendant’s motion, and finds them to be without merit. Accordingly, for this reason, as well as the decision set forth above, it is hereby
Ordered that the motion to set aside the verdict, pursuant to CPL 330.30 (subd 1) is, in all respects, denied.