OPINION OF THE COURT
Herbert J. Adlerberg, J.
On June 14, 1984, following a jury trial before this court, the defendant was convicted of violating Vehicle and Traffic Law § 1192 (1) and (2).
At the close of the case, and prior to summations and charge, the defendant moved for a trial order of dismissal as to the count alleging a violation of Vehicle and Traffic Law § 1192 (2). The court reserved decision on that application so as not to prejudice the People’s right to appeal. (See, People v Leach, 57 AD2d 332.)
The defendant now renews that application.
A brief review of the relevant evidence is in order.
On July 8, 1983 the defendant was arrested for driving while intoxicated. Following his arrest he was transported to the 28th Precinct and asked to submit to a chemical test of his breath. The defendant consented and within two hours of his arrest was given a breathalyzer test by Patrolman Donald Olley. The results of this test indicated that the defendant had .18 of 1% of alcohol in his blood.
*675 Detective Joseph Bonamo, assigned to the police laboratory for the past 14 Vi years and to the Intoxicated Driver Test Unit for the past six years, testified that he calibrated the breathalyzer employed in the instant case, and that he prepares the solutions used in the simulators.
The solution is composed of 200 proof ethyl alcohol and distilled water, and designed to produce a reading of .10 of 1% of alcohol. The solution is then placed in the simulator which is activated until it reaches an operating temperature of 34 degrees centigrade or the average temperature of the human mouth. The simulator is then affixed to the breathalyzer; air from the simulator is "blown into” the breathalyzer, whereupon the breathalyzer is calibrated at .10 of 1% of alcohol.
He testified that he brought the simulator employed in the instant case to the 28th Precinct on July 7, 1983 after having cleaned it out and refilled it with a new solution. He inspected the breathalyzer, using the simulator and achieved results within specifications and concluded that the breathalyzer was functioning properly.
Detective Bonamo further testified that although the manufacturer of the simulator, Smith & Wesson, bottles and distributes under seal a simulator solution which is designed to produce a .10 reading when calibrating the breathalyzer, the New York City Police Department chooses to manufacture its own simulator solution at the police laboratory.*
Bonamo did not recall when the solution used in this case was prepared, or if he or some other officer prepared it, or what the shelf life of the bottled solution was. He conceded that alcohol tends to evaporate over a course of time, and that such evaporation would affect the proper chemical balance of the simulator solution.
Finally, Detective Bonamo testified that at optimum conditions, the breathalyzer is capable of a .05% error.
The defendant contends that no foundation was laid for the admission into evidence of the breathalyzer test results. More particularly he argues that the People failed to establish that the breathalyzer was properly calibrated since the People were unable to offer proof that the simulator solution con *676 tained the proper percentage of alcohol and distilled water necessary to insure a proper calibration of the breathalyzer prior to its use in testing the defendant’s breath.
He contends that the simulator or reference solution is an indispensable part of the test and the only means to calibrate the breathalyzer machine. Since the Police Department chooses not to use preparations prepared by the machine’s manufacturer as the standard solution for its simulators, but opts instead to manufacture its own solution in the police laboratory, some record and some certification of the solution within a reasonable time reference to the date of the test is mandated. He argues that the People have the burden to introduce such evidence, and if they fail to do so, the results of the breathalyzer test should not be admitted into evidence.
The defendant relies upon People v Donaldson (36 AD2d 37) where the court, in upholding a driving while intoxicated conviction under Vehicle and Trafile Law § 1192 (2), commented that the officer who administered the test was qualified, and that there was ample proof that the breathalyzer was properly calibrated and that the chemicals used in the test were of the proper kind and mixed in the proper proportions. (People v Donaldson, supra, at pp 41-42.)
He argues Donaldson (supra) mandates such proof before the breathalyzer results may be admitted and since the People failed to offer proof of proper calibration, and failed to establish the chemicals used in the test were of the proper kind and in proper proportion, the results should have been excluded, and the count alleging a violation of Vehicle and Traffic Law § 1192 (2) should be dismissed.
It is true that following the Donaldson decision, certain courts interpreted that case as imposing rigid requirements of proof before a test result of a breathalyzer could be admitted into evidence. (See, People v Smith, 81 Misc 2d 61; People v. Meikrantz, 77 Misc 2d 892.)
In People v Gower (42 NY2d 117) the Court of Appeals reversed five convictions for violation of Vehicle and Traffic Law § 1192 (2).
In all cases, the People offered certificates certifying as to the results of the analysis of the simulator solutions. Since these certificates technically violated the rule against hearsay, the court ruled that their admission was error, and accordingly reversed the convictions, since "no assertion is now made that the results of the breathalyzer tests were admissible *677 without them." (People v Gower, supra, at p 121; emphasis supplied.) The court by way of dictum went on to say: "It is worth adding another observation. Perhaps of greater importance than the procedural issue concerning the admissibility of particular forms of documentary evidence, is the underlying question of substantive law — what foundation must now be laid for the admission of breathalyzer results. Breathalyzer equipment and procedures have become familiar and their use is now commonplace. Reliability has been demonstrated and the results of such testing where properly performed are universally accepted. This is not to say, however, that no foundation should be any longer required for introduction of breathalyzer evidence. It is to say that there may now appropriately be some relaxation of the rigorous prerequisites properly required to authenticate the reliability of the scientific equipment and the procedures where they were first employed * * * Thus, emphasis may be shifted from technical issues of admissibility of evidence to means for measuring its persuasive weight. No precise or even general guidelines can be laid down in advance; necessarily the requirements in each case will depend on the peculiar circumstances of that case * * * Thus, we do not determine whether or to what degree the People, in laying a foundation for admission of the results of individual tests, would have to establish that the breathalyzer device used was in proper working order, e.g., whether in every instance there must be proof of the alcoholic content of the simulator solution used to calibrate the device.” (People v Gower, supra, at pp 121-122.)
Subsequent to the Gower decision (supra) several courts have ruled admissible the results of chemical tests employing various breath testing devices without requiring any certification that the simulator solutions were properly prepared. (See, People v Drumm, 122 Misc 2d 1051 [intoxilyzer]; People v Freeland, 118 Misc 2d 486 [breathalyzer].)
While it is now quite clear that the Donaldson case (supra), and its various lower court progeny do not set forth rigid requirements of proof prior to the introduction into evidence of the breathalyzer test results, and there may be some relaxation regarding the foundations necessary to authenticate the reliability of the test results, nevertheless, each case must still be determined on its own peculiar facts. There are no precise guidelines. There is no bright line approach. (People v Gower, supra.)
In the instant case there was no foundation establishing *678 that the simulator solution was properly prepared. In addition, by virtue of an adroit cross-examination the defendant was able to develop evidence tending to cast doubt upon its reliability.
As stated above, the officer who calibrated the breathalyzer did not know who prepared the solution, when it was prepared or how long it had been lying on the shelf at the police laboratory prior to its use. He candidly conceded that alcohol tends to evaporate over a course of time and, if that occurred, it would affect the chemical balance of the reference solution, thus ultimately affecting the calibration of the breathalyzer.
Accordingly, on the unique facts of this case, the results of the breathalyzer test should not have been admitted into evidence, and the defendant’s motion for a trial order of dismissal of the second count of the information alleging a violation of Vehicle and Traffic Law § 1192 (2) is granted.

 Subsequent to trial, the court was informed by Detective Bonamo of the Police Department of the City of New York that the New York City Police Department no longer manufactures their own brew but uses the bottled solution of Systems Innovation Inc. of Hallstead, Pennsylvania (eff Feb. 15, 1985).