OPINION OF THE COURT
John J. Ark, J.
On April 8, 1985, at 2:25 A.M., Monroe County Sheriff’s Deputy Arnold Benningson observed the defendant’s vehicle changing lanes without signaling while traveling northbound on Route 15 in the Town of Brighton. The deputy pulled over and approached the defendant’s vehicle. From outside the defendant’s car the deputy noticed the defendant’s hands were trembling as he looked through his wallet for his driver’s license. The deputy smelled the strong odor of an alcoholic beverage on the defendant’s breath. The deputy observed the defendant swaying slightly as he exited his vehicle. He also noticed the defendant’s face was flushed and he once again observed the odor of an alcoholic beverage. The deputy testified that the defendant was polite and courteous. Deputy Benningson then radioed for the Sheriff Department’s mobile DWI processing van which arrived within 20 minutes. The van operator, Deputy Stephen Harrison, observed that although the defendant’s face was pale, his cheeks were flushed and he swayed when he walked. Deputy Harrison then tested the defendant’s breath on a CMI Intoxilyzer 4011AS instrument. At this point in the trial defense counsel objected to the *38 introduction into evidence of the test result on the grounds that the People must present expert testimony to establish the reliability of the Intoxilyzer 401 IAS.
The court allowed the prosecution to offer proof of the test results but reserved on the objection made by defense counsel.
The People presented a very thorough memorandum citing several reasons why expert testimony is not necessary at the time of trial on the reliability of the Intoxilyzer 401 IAS. The first 10 pages of the memorandum set forth the background and development of the Intoxilyzer 401 IAS. In addition, Federal and New York State legislative and administrative recognitions of the reliability of the Intoxilyzer 401 IAS were set forth. However, this court must only consider New York State statutory and administrative authority.
The prosecution maintains that "the admission of test results on an Intoxilyzer certified by the Department of Health without the necessity of expert testimony is mandated by § 1195 (1) of the Vehicle and Traffic Law.”
Section 1195 (1) does state "the court shall admit evidence of the amount of alcohol or drugs in the defendant’s blood as shown by a test administered pursuant to the provisions of [§ 1194] of this chapter.” However, section 1194 (9) refers only to "the qualifications and competence of individuals to conduct and supervise chemical analyses of a person’s blood, urine, breath or saliva” and does not acknowledge specifically any type of equipment, let alone an Intoxilyzer 4011AS.
If the Legislature had desired that courts admit evidence ascertained from specific breath testing equipment, the statutes would read accordingly. Since criminal statutes are to be construed strictly, this court cannot surmise from a reading of Vehicle and Traffic Law §§ 1194 and 1195 that the results of an Intoxilyzer 4011AS are to be allowed into evidence on anything other than a common-law evidentiary basis.
Both the prosecution and the defense rely on People v Donaldson (36 AD2d 37 [4th Dept 1971]) as authority for their respective positions. The prosecution emphasizes that in Donaldson the equipment in question, the breathalyzer, had been in use for many years and was widely accepted by law enforcement agencies. The defense points out that the Intoxilyzer 4011AS does not have a history equivalent to the breathalyzer.
The Donaldson court (supra) reiterated the rationale of People v Morris (63 Misc 2d 124), which held it was no longer *39 necessary to require expert testimony to establish the general reliability of the machine. However, People v Morris is distinguishable from the instant case.
In Morris (supra), the District Court of Nassau County took judicial notice of the court’s own records which indicated that the equipment before the court was consistently used by the Nassau County Police Department. This is not the present situation. In the Brighton Town Court, only the Monroe County Sheriffs Department uses the Intoxilyzer 4011AS. The Brighton Police Department and the New York State Police use the breathalyzer. Accordingly, there is no wide acceptance or lengthy history of use of the Intoxilyzer 4011AS by local law enforcement agencies.
Secondly, in Morris (supra) the prosecution had consistently provided a qualified chemist to testify to the theory and workings of the breath testing equipment. In the instant case, the prosecution never presented to this court testimony as to the theory or workings of the Intoxilyzer 4011AS.
The Morris court (supra, p 127) went on to say that in light of the heavy volume of such cases, "[p]roof by expert testimony should not be required to establish the general reliability of the machine.” However, the Morris court stated that the testing of the machine and its various components was not adequate to prove the reasonable accuracy beyond a reasonable doubt. Accordingly, with no other evidence of intoxication or impairment, there would have been insufficient proof to sustain a conviction.
The Morris court (supra) also noted that the police agency took two samples of the defendant’s breath, each resulting in the same reading and this duplication of sampling was some evidence supporting the accuracy of the reading. Coincidentally, this court in People v Shepherd (118 Misc 2d 365) mandated that when a breath test is taken, a second sample should also be taken and preserved for future testing by the defendant. However, only one sample was taken in the instant case.
The second case upon which Donaldson (and People v Morris) rely is People v Magri (3 NY2d 562). In Magri, the issue before the Court of Appeals was whether proof by expert testimony should be required to establish the general reliability of radar speed meters. However, Magri is also distinguishable from the instant situation.
In Magri (supra), the court noted the widespread and sue *40 cessful use of radar in the armed services as well as on ships and aircraft and at airports. In addition, the court emphasized that the question of the reliability of radar speed meters has been passed upon by several lower courts in New York State. Neither of these factors are currently present.
Of the three local Superior Court Judges who have reviewed the evidence in reference to reliability and admissibility of the Intoxilyzer 4011AS test result, only one has held that it is no longer necessary to produce an expert in an Intoxilyzer 4011AS case. In People v Drumrn (122 Misc 2d 1051), acting County Court Judge Cornelius found that the Intoxilyzer was reliable. However, he had as a basis the testimony of a qualified expert. Conversely, in People v MacNamara and People v Thompson neither Judge received into evidence the Intoxilyzer 401 IAS test results.
As in Morris (supra), the trial court in Magri (supra) did not allow into evidence the result of the equipment in question. Thus, in neither of the common-law foundations to Donaldson (supra), to wit: People v Morris and People v Magri, would the results of the equipment being tested have been sufficient in and of themselves to sustain the conviction of the respective defendants.
However, People v Morris (supra) is not without value. As pointed out in the opinion, "Since the readings of .14 are the results of a statutory test, they are admissible. Section 1192 of the Vehicle and Traffic Law expressly so provides. Of course there must be adequate proof that the test was so conducted and the apparatus of such a nature and such operating condition that it produced a reasonably accurate result” (pp 125-126).
The logic of Morris (supra) is compelling. Unfortunately, having had no expert testimony presented, this court is without any record to make its own determination as to the instrument’s reliability. Likewise, although this court believes the Intoxilyzer 4011AS might be acceptable equipment, there are no statutory or appellate court mandates requiring its test results to be accepted into evidence. Accordingly, the objection of defense counsel to the admissibility of the test result is sustained.
Since the test result is not admissible, the observations of the deputies are the only evidence before the court. The defendant’s driving pattern, breath, flushed face and staggered gait are some proof of alcohol ingestion. Contrariwise, the *41 defendant’s polite and courteous demeanor and the lack of other incriminating observations by the deputies tend to exculpate the defendant. The defendant’s tremoring hands can be explained as nervousness upon being stopped by a police officer.
Although both deputies stated that they believed that the defendant was intoxicated, upon cross-examination neither deputy could articulate what intoxication meant. Nor could either deputy distinguish between an individual being intoxicated and being impaired by the use of alcohol.
Accordingly, the court finds the defendant not guilty of driving while intoxicated. However, the court finds beyond a reasonable doubt that the defendant was guilty of driving his vehicle while impaired by the use of alcohol in that his consumption of alcohol diminished to an appreciable degree his ability to operate his vehicle in a manner like that of an ordinary, prudent and cautious person in full possession of his faculties, using reasonable care under like conditions.
Concomitant with this decision this court calls upon the appellate courts and Legislature of New York to urgently give direction to the trial courts in this important area of testing suspected drunken drivers.