OPINION OF THE COURT
Peter E. Sterling, J.
The defendant moved this court for an order suppressing evidence, and any information obtained therefrom and suppressing the use of said evidence upon the trial of Jeffrey C. Mickle, *719 and the issues raised by said motion were duly heard and tried before this court on January 4, 2001.
Now, on reading the memorandum of law submitted by the defendant on February 1, 2001, and the memorandum of law submitted by the Assistant District Attorney on February 8, 2001, and on all the evidence adduced before the court on the trial of the charges, and due consideration having been had, the court finds the following facts and renders the following decision:
The defendant was arrested on July 29, 2000 for violation of: New York State Vehicle and Traffic Law § 1192 (1) (driving while ability impaired); New York State Vehicle and Traffic Law § 1180 (b) (speed in zone); and New York State Vehicle and Traffic Law § 1128 (d) (driving across hazard markings). The hearing of these matters commenced as a bench trial on January 4, 2001 in Canaan Town Court. James Kleinbaum represented the defendant and Assistant District Attorney David Costanzo represented the People.
During the course of the proceedings the People submitted, without objection from the defense, the People’s exhibits:
P-1. The breathalyzer operator certificate of the arresting officer, Yvonne Speed, nee Boucher. Said certificate certified her to operate the Alcotest 7110 MKIII for a period from April 18, 1999 to April 18, 2002 and further indicated that the officer has been continuously certified since April 18, 1997.
P-2. The radar operator permit for Officer Boucher, certifying her as a qualified operator for doppler traffic radar.
P-3. The certificate of photostatic copy of record of analysis for the simulator solution (pursuant to CPLR 4518) with attached record of analysis dated April 26, 2000, which indicated that the simulator solution analysis by gas — liquid chromatography was performed on April 19, 2000.
P-4. The certificate of photostatic copy of record of calibration for the breath test instrument (pursuant to CPLR 4518) with attached certificate of calibration for the breath test machine used in the instant matter, a Draeger Alcotest 7110 MKIII.
Officer Boucher testified to the facts which led her to administer the Draeger Alcotest 7110 MKIII (hereinafter Draeger) to the defendant. The officer also testified at great length concerning the Draeger. She testified that the Draeger completed a series of internal self-diagnostic tests both before and after the defendant’s test to ensure that the instrument *720 was in proper working order. The officer testified that the Draeger passed all of these internal self-diagnostic tests. She additionally stated that if the Draeger did not pass these tests it would shut itself off automatically. Officer Boucher further testified that at no time during the administration of the breath test did the instrument shut itself off.
At the conclusion of Officer Boucher’s testimony and after the admission of People’s exhibit No. 4, the defense made a motion to preclude the breath test from admission into evidence on the grounds that there is reasonable doubt as to its reliability. This objection is in the nature of an objection to lack of foundation and was made in limine.
The defense based this motion upon the “six-month rule” and cited the case of People v Todd (38 NY2d 755 [1975]) in support of their position. They also argued that the Court of Appeals in People v Mertz (68 NY2d 136, 148 [1986]) cited People v Todd in support of its holding that the “particular instrument used to test [the] defendant’s [blood alcohol content] * * * had been tested within a reasonable period in relation to [the] defendant’s test.” The defense, citing these two cases and claiming that “the Alcotest machine was not calibrated for more than seven in a [sic] half months prior to the test, there is, at the very least, reasonable doubt as to its reliability.”
The People hold that “The Todd case only stated that it is incumbent upon the District Attorney to show that the machine was in proper working order” and therefore the Court of Appeals never set forth a per se “six-month rule.” Then the People cited (noting that it was decided after Todd) the case of People v Gower (42 NY2d 117, 122 [1977]) to support their contention that there is no “six-month rule” and in fact, “[n]o precise or even general guidelines can be laid down in advance; necessarily the requirements in each case will depend on their peculiar circumstances of the case.” Furthermore they cited People v Freeland (68 NY2d 699, 700 [1986]), which holds that the only requirement is that “[T]he People must introduce evidence from which the trier of fact could reasonably conclude * * * that the testing device was in proper working order at the time the test was administered to the defendant * * * and that the chemicals used * * * were of the proper kind and mixed in the proper proportions.” The People also noted that Freeland cited Gower. Next, the People cite People v Pompilio (137 Misc 2d 997, 999 [1987]) in that it holds “Calibration of the breathalyzer instrument within six months of the administration of the breath test to the defendant is one means the prosecution *721 has for meeting this burden, but it is not the only means.” The Pompilio court (at 999) cited Gower, Freeland, and Todd in holding that “No precise or even general guidelines can be laid down in advance; necessarily the requirements in each case will depend on the particular circumstances of the case. Consequently, the so-called ‘six-month rule’ no longer exists, if it ever did.” Lastly, the People cite People v Manino (147 AD2d 926 [4th Dept 1989]) in which the court allowed the admission of the breath test results when the instrument had been calibrated 11 months before.
In light of all the foregoing, the People argue that they set forth sufficient facts to show that the instrument was in proper working order; the simulator solution was valid; and that the instrument conducted and passed various self-diagnostic tests both before and after the defendant’s breath test. Therefore, these facts, coupled with the instrument’s calibration, “on January 10, 2000, which is 6 months and 19 days prior to the defendant’s test,” show that the instrument was in proper working order.
The defense responded to the People’s citing of Gower by pointing to the dicta of Freeland (at 700) wherein the Court of Appeals states: “As a foundational requirement for the admission of breathalyzer test results in a prosecution under Vehicle and Traffic Law § 1192, the People must introduce evidence from which the trier of fact could reasonably conclude * * * that the testing device was in proper working order at the time the test was administered to the defendant * * * People v Gower * * * does not establish a contrary rule, despite its suggestion that it might be appropriate to shift the emphasis in such matters from ‘technical issues of admissibility of evidence to means for measuring its persuasive weight’ (id., pp 121-122).”
The only fact in dispute is the issue of elapsed time subsequent to calibration of the Draeger, an issue which is simply resolved. By referring to the uncontroverted testimonial evidence (as well as the People’s exhibit No. 4) and a calendar, one can see that the People’s calculation of the elapsed time is correct, i.e., 6 months and 19 days. Noting that this is almost three weeks beyond the contested “six-month rule” the court is faced with the thorny issue of the Draeger’s reliability and whether or not there is reasonable doubt as to the machine’s reliability.
The reliability of breathalyzer instruments is well settled as a matter of law. (People v Donaldson, 36 AD2d 37; People v *722 Gower, 42 NY2d 117, supra; People v Ippolito, 100 AD2d 734.) However, the “six-month rule” is not so clearly framed. Those cases cited by the People above answer the question of such a rule in the negative. However, it is also apparent that many courts view People v Todd (38 NY2d 755, supra) as a clear and controlling authority for support of the proposition of a “six-month rule.” This court agrees and finds it to be dispositive here. The rule may be modified at some point by a higher court; however, this court sees no lower court rulings that have been confirmed or overruled by the Court of Appeals. In the absence of such pronouncement, six months is the rule of Todd.
The issue at hand is further obfuscated by the introduction of the Draeger and its radically different technology. As a new computerized breath-testing device, it self-calibrates and runs diagnostic tests during every breath test. The People argue that there is no “six-month rule” and that the People only need to introduce evidence from which the trier of fact could reasonably conclude that the testing device was in proper working order. Assuming, arguendo, if that is the case, this court does not see itself as empowered to make a scientific evaluation of this instrument vis-á-vis the previous breath analysis machines it replaced. While one might think an inherent superiority would exist in such advanced technology, that cannot be assumed. History is replete with examples of new technology which was widely heralded at the time of its introduction, but later proved to be fatally flawed.
It is therefore ordered that said motion be granted, and it is further ordered that the District Attorney of Columbia County be and is restrained and precluded from using, upon the trial of the above-named defendant, any of the said evidence — the Draeger Alcotest performed on Jeffrey Mickle on July 29, 2000. In that the People failed to lay a sufficient foundation as to the reliability of the Draeger and lacking existing case law on this new instrument it appears that the rule of Todd applies and proper foundation for the Draeger can only be accomplished through testimony by an independent expert witness from the scientific community.